# WITTE *v.* UNITED STATES

No. 94–6187.   Argued April 17, 1995—Decided June 14, 1995

O'CONNOR, J., delivered the opinion of the Court, in Parts I, II, and IV of which REHNQUIST, C. J., and KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined, and in Part III of which STEVENS, SOUTER, GINSBURG, and BREYER, JJ., joined. SCALIA, J., filed an opinion concurring in

the judgment, in which THOMAS, J., joined, *post*, p. 406. STEVENS, J., filed an opinion concurring in part and dissenting in part, *post*, p. 407.

*H. Michael Sokolow* argued the cause for petitioner. With him on the briefs were *Roland E. Dahlin II* and *Thomas S. Berg.*

*Edward C. DuMont* argued the cause for the United States. With him on the brief were *Solicitor General Days, Assistant Attorney General Harris, Deputy Solicitor General Dreeben,* and *Joseph C. Wyderko.**

JUSTICE O'CONNOR delivered the opinion of the Court.†

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution prohibits successive prosecution or multiple punishment for "the same offence." This case, which involves application of the United States Sentencing Guidelines, asks us to consider whether a court violates that proscription by convicting and sentencing a defendant for a crime when the conduct underlying that offense has been considered in determining the defendant's sentence for a previous conviction.

I

In June 1990, petitioner Steven Kurt Witte and several co-conspirators, including Dennis Mason and Tom Pokorny, arranged with Roger Norman, an undercover agent of the Drug Enforcement Administration, to import large amounts of marijuana from Mexico and cocaine from Guatemala. Norman had the task of flying the contraband into the United States, with Witte providing the ground transportation for the drugs once they had been brought into the country. The following month, the Mexican marijuana source advised the conspiracy participants that cocaine might be added to the

---

*Peter Goldberger* and *Scott A. Srebnick* filed a brief for the National Association of Legal Defense Lawyers as *amicus curiae* urging reversal.

†THE CHIEF JUSTICE and JUSTICE KENNEDY join all but Part III of this opinion, and JUSTICE STEVENS joins only Part III.

first shipment if there was room on the plane or if an insufficient quantity of marijuana was available. Norman was informed in August 1990 that the source was prepared to deliver 4,400 pounds of marijuana. Once Norman learned the location of the airstrip from which the narcotics would be transported, federal agents arranged to have the participants in the scheme apprehended in Mexico. Local authorities arrested Mason and four others on August 12 and seized 591 kilograms of cocaine at the landing field. While still undercover, Norman met Witte the following day to explain that the pilots had been unable to land in Mexico because police had raided the airstrip. Witte was not taken into custody at that time, and the activities of the conspiracy lapsed for several months.

Agent Norman next spoke with Witte in January 1991 and asked if Witte would be interested in purchasing 1,000 pounds of marijuana. Witte agreed, promised to obtain a $50,000 down payment, and indicated that he would transport the marijuana in a horse trailer he had purchased for the original 1990 transaction and in a motor home owned by an acquaintance, Sam Kelly. On February 7, Witte, Norman, and Kelly met in Houston, Texas. Norman agreed to give the drugs to Witte in exchange for the $25,000 in cash Witte had been able to secure at that time and for a promise to pay the balance of the down payment in three days. Undercover agents took the motor home and trailer away to load the marijuana, and Witte escorted Norman to Witte's hotel room to view the money. The agents returned the vehicles the next morning loaded with approximately 375 pounds of marijuana, and they arrested Witte and Kelly when the two men took possession of the contraband.

In March 1991, a federal grand jury in the Southern District of Texas indicted Witte and Kelly for conspiring and attempting to possess marijuana with intent to distribute it, in violation of 21 U. S. C. §§ 841(a) and 846. The indictment was limited on its face to conduct occurring on or about

January 25 through February 8, 1991, thus covering only the later marijuana transaction. On February 21, 1992, Witte pleaded guilty to the attempted possession count and agreed to cooperate "with the Government by providing truthful and complete information concerning this and all other offenses about which [he] might be questioned by agents of law enforcement," and by testifying if requested to do so. App. 14. In exchange, the Government agreed to dismiss the conspiracy count and, if Witte's cooperation amounted to "substantial assistance," to file a motion for a downward departure under the Sentencing Guidelines. See United States Sentencing Commission, Guidelines Manual § 5K1.1 (Nov. 1994) (USSG).

In calculating Witte's base offense level under the Sentencing Guidelines, the presentence report prepared by the United States Probation Office considered the total quantity of drugs involved in all of the transactions contemplated by the conspirators, including the planned 1990 shipments of both marijuana and cocaine. Under the Sentencing Guidelines, the sentencing range for a particular offense is determined on the basis of all "relevant conduct" in which the defendant was engaged and not just with regard to the conduct underlying the offense of conviction. USSG § 1B1.3. The Sentencing Commission has noted that, "[w]ith respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." USSG § 1B1.3, comment., n. 2; see also USSG § 2D1.1, comment., nn. 6, 12. The presentence report therefore suggested that Witte was accountable for the 1,000 pounds of marijuana involved in the attempted possession offense to which he pleaded guilty, 15 tons of marijuana that Witte, Mason, and Pokorny had planned to import from Mexico in

1990, 500 kilograms of cocaine that the conspirators originally proposed to import from Guatemala, and the 591 kilograms of cocaine seized at the Mexican airstrip in August 1990.

At the sentencing hearing, both petitioner and the Government urged the court to hold that the 1990 activities concerning importation of cocaine and marijuana were not part of the same course of conduct as the 1991 marijuana offense to which Witte had pleaded guilty, and therefore should not be considered in sentencing for the 1991 offense. The District Court concluded, however, that because the 1990 importation offenses were part of the same continuing conspiracy, they were "relevant conduct" under § 1B1.3 of the Guidelines and should be taken into account. The court therefore accepted the presentence report's aggregation of the quantities of drugs involved in the 1990 and 1991 episodes, resulting in a base offense level of 40, with a Guideline range of 292 to 365 months' imprisonment. App. 80–81; see also USSG § 2D1.1. From that base offense level, Witte received a two-level increase for his aggravating role in the offense, see USSG § 3B1.1, and an offsetting two-level decrease for acceptance of responsibility, see USSG § 3E1.1. Finally, the court granted the Government's § 5K1.1 motion for downward departure based on Witte's substantial assistance. By virtue of that departure, the court sentenced Witte to 144 months in prison, see App. 76, which was 148 months below the minimum sentence of 292 months under the predeparture Guideline range. Witte appealed, but the Court of Appeals dismissed the case when Witte failed to file a brief.

In September 1992, another grand jury in the same district returned a two-count indictment against Witte and Pokorny for conspiring and attempting to import cocaine, in violation of 21 U. S. C. §§ 952(a) and 963. The indictment alleged that, between August 1989 and August 1990, Witte tried to import about 1,091 kilograms of cocaine from Central America. Witte moved to dismiss, arguing that he had already been

punished for the cocaine offenses because the cocaine involved in the 1990 transactions had been considered as "relevant conduct" at sentencing for the 1991 marijuana offense. The District Court dismissed the indictment in February 1993 on grounds that punishment for the indicted offenses would violate the prohibition against multiple punishments contained in the Double Jeopardy Clause of the Fifth Amendment. App. 130–136.

The Court of Appeals for the Fifth Circuit reversed. 25 F. 3d 250 (1994). Relying on our decision in *Williams* v. *Oklahoma*, 358 U. S. 576 (1959), the court held that "the use of relevant conduct to increase the punishment of a charged offense does not punish the offender for the relevant conduct." 25 F. 3d, at 258. Thus, although the sentencing court took the quantity of cocaine involved in the 1990 importation scheme into account when determining the sentence for Witte's 1991 marijuana possession offense, the Court of Appeals concluded that Witte had not been punished for the cocaine offenses in the first prosecution—and that the Double Jeopardy Clause therefore did not bar the later action. In reaching this result, the court expressly disagreed with contrary holdings in *United States* v. *Koonce*, 945 F. 2d 1145 (CA10 1991), cert. denied, 503 U. S. 994 (1992), and *United States* v. *McCormick*, 992 F. 2d 437 (CA2 1993), that when a defendant's actions are included in relevant conduct in determining the punishment under the Sentencing Guidelines for one offense, those actions may not form the basis for a later indictment without violating double jeopardy. We granted certiorari to resolve the conflict among the Circuits, 513 U. S. 1072 (1995), and now affirm.

## II

The Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U. S. Const., Amdt. 5. We have explained that "the Clause serves the function of preventing

both successive punishment and successive prosecution," *United States* v. *Dixon*, 509 U. S. 688, 704 (1993) (citing *North Carolina* v. *Pearce*, 395 U. S. 711 (1969)), and that "the Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it," *Ex parte Lange*, 18 Wall. 163, 173 (1874). See also *Schiro* v. *Farley*, 510 U. S. 222, 229–230 (1994); *United States* v. *Halper*, 490 U. S. 435, 440, 451, n. 10 (1989). Significantly, the language of the Double Jeopardy Clause protects against more than the actual imposition of two punishments for the same offense; by its terms, it protects a criminal defendant from being *twice put in jeopardy* for such punishment. See *Price* v. *Georgia*, 398 U. S. 323, 326 (1970). That is, the Double Jeopardy Clause "prohibits merely punishing twice, or *attempting a second time to punish criminally*, for the same offense." *Helvering* v. *Mitchell*, 303 U. S. 391, 399 (1938) (emphasis added).

Petitioner clearly was neither prosecuted for nor convicted of the cocaine offenses during the first criminal proceeding. The offense to which petitioner pleaded guilty and for which he was sentenced in 1992 was attempted possession of marijuana with intent to distribute it, whereas the crimes charged in the instant indictment are conspiracy to import cocaine and attempted importation of the same. Under *Blockburger* v. *United States*, 284 U. S. 299, 304 (1932), "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." See also *Dixon, supra*, at 696 (emphasizing that the same inquiry generally applies "[i]n both the multiple punishment and multiple prosecution contexts"). Under the *Blockburger* test, the indictment in this case did not charge the same offense to which petitioner formerly had pleaded guilty.

Petitioner nevertheless argues that, because the conduct giving rise to the cocaine charges *was* taken into account during sentencing for the marijuana conviction, he effectively was "punished" for that conduct during the first proceeding. As a result, he contends, the Double Jeopardy Clause bars the instant prosecution. This claim is ripe at this stage of the prosecution—although petitioner has not yet been convicted of the cocaine offenses—because, as we have said, "courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial." *Brown* v. *Ohio*, 432 U. S. 161, 165 (1977). See also *Ball* v. *United States*, 470 U. S. 856, 861, 864–865 (1985) (explaining that, for purposes of the double jeopardy inquiry, punishment "must be the equivalent of a criminal conviction and not simply the imposition of sentence"); *Ex parte Lange, supra,* at 173. Thus, if petitioner is correct that the present case constitutes a second attempt to punish him criminally for the same cocaine offenses, see *Helvering, supra,* at 399, then the prosecution may not proceed. We agree with the Court of Appeals, however, that petitioner's double jeopardy theory—that consideration of uncharged conduct in arriving at a sentence within the statutorily authorized punishment range constitutes "punishment" for that conduct—is not supported by our precedents, which make clear that a defendant in that situation is punished, for double jeopardy purposes, only for the offense of which the defendant is convicted.

Traditionally, "[s]entencing courts have not only taken into consideration a defendant's prior convictions, but have also considered a defendant's past criminal behavior, even if no conviction resulted from that behavior." *Nichols* v. *United States*, 511 U. S. 738, 747 (1994). We explained in *Williams* v. *New York*, 337 U. S. 241, 246 (1949), that "both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources

and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." That history, combined with a recognition of the need for individualized sentencing, led us to conclude that the Due Process Clause did not require "that courts throughout the Nation abandon their age-old practice of seeking information from out-of-court sources to guide their judgment toward a more enlightened and just sentence." *Id.,* at 250–251. Thus, "[a]s a general proposition, a sentencing judge 'may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.'" *Nichols, supra,* at 747 (quoting *United States* v. *Tucker,* 404 U. S. 443, 446 (1972)). See also *Wisconsin* v. *Mitchell,* 508 U. S. 476, 485 (1993).

Against this background of sentencing history, we specifically have rejected the claim that double jeopardy principles bar a later prosecution or punishment for criminal activity where that activity has been considered at sentencing for a separate crime. *Williams* v. *Oklahoma,* 358 U. S., at 576, arose out of a kidnaping and murder committed by the petitioner while attempting to escape from police after a robbery. Following his arrest, Williams pleaded guilty to murder and was given a life sentence. He was later convicted of kidnaping, which was then a capital offense in Oklahoma, and the sentencing court took into account, in assessing the death penalty, the fact that the kidnaping victim had been murdered. We rejected Williams' contention that this use of the conduct that had given rise to the prior conviction violated double jeopardy. Emphasizing that "the exercise of a sound discretion in such a case required consideration of all the circumstances of the crime," we made clear that "one of the aggravating circumstances involved in this kidnaping crime was the fact that petitioner shot and killed the victim in the course of its commission," and rejected the claim "that the sentencing judge was not entitled to consider that cir-

cumstance, along with all the other circumstances involved, in determining the proper sentence to be imposed for the kidnaping crime." *Id.,* at 585–586. We then disposed of the petitioner's double jeopardy claim as follows: "[I]n view of the obvious fact that, under the law of Oklahoma, kidnaping is a separate crime, entirely distinct from the crime of murder, the court's consideration of the murder as a circumstance involved in the kidnaping crime cannot be said to have resulted in punishing petitioner a second time for the same offense . . . ." *Id.,* at 586. We thus made clear that use of evidence of related criminal conduct to enhance a defendant's sentence for a separate crime within the authorized statutory limits does not constitute punishment for that conduct within the meaning of the Double Jeopardy Clause.

We find this case to be governed by *Williams;* it makes no difference in this context whether the enhancement occurred in the first or second sentencing proceeding. Here, petitioner pleaded guilty to attempted possession of marijuana with intent to distribute it, in violation of 21 U. S. C. §§ 841(a) and 846. The statute provides that the sentence for such a crime involving 100 kilograms or more of marijuana must be between 5 and 40 years in prison. § 841(b)(1)(B). By including the cocaine from the earlier transaction—and not just the marijuana involved in the offense of conviction—in the drug quantity calculation, the District Court ended up with a higher offense level (40), and a higher sentence range (292 to 365 months), than it would have otherwise under the applicable Guideline, which specifies different base offense levels depending on the quantity of drugs involved. USSG § 2D1.1. This higher Guideline range, however, still falls within the scope of the legislatively authorized penalty (5 to 40 years). As in *Williams,* the uncharged criminal conduct was used to enhance petitioner's sentence within the range authorized by statute. If use of the murder to justify the death sentence for the kidnaping conviction was not "punishment" for the murder in *Williams,* it is impossible to con-

clude that taking account of petitioner's plans to import cocaine in fixing the sentence for the marijuana conviction constituted "punishment" for the cocaine offenses.

*Williams*, like this case, concerned the double jeopardy implications of taking the circumstances surrounding a particular course of criminal activity into account in sentencing for a conviction arising therefrom. Similarly, we have made clear in other cases, which involved a defendant's background more generally and not conduct arising out of the same criminal transaction as the offense of which the defendant was convicted, that "[e]nhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes which are common place in state criminal laws, do not change the penalty imposed for the earlier conviction." *Nichols*, 511 U. S., at 747 (approving consideration of a defendant's previous uncounseled misdemeanor conviction in sentencing him for a subsequent offense). In repeatedly upholding such recidivism statutes, we have rejected double jeopardy challenges because the enhanced punishment imposed for the later offense "is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes," but instead as "a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." *Gryger* v. *Burke*, 334 U. S. 728, 732 (1948). See also *Spencer* v. *Texas*, 385 U. S. 554, 560 (1967); *Oyler* v. *Boles*, 368 U. S. 448, 451 (1962); *Moore* v. *Missouri*, 159 U. S. 673, 677 (1895) (under a recidivist statute, "the accused is not again punished for the first offence" because " 'the punishment is for the last offence committed, and it is rendered more severe in consequence of the situation into which the party had previously brought himself' ").

In addition, by authorizing the consideration of offender-specific information at sentencing without the procedural protections attendant at a criminal trial, our cases necessarily imply that such consideration does not result in "punish-

ment" for such conduct. In *McMillan* v. *Pennsylvania*, 477 U. S. 79 (1986), we upheld against a due process challenge Pennsylvania's Mandatory Minimum Sentencing Act, which imposed a 5-year minimum sentence for certain enumerated felonies if the sentencing judge found, by a preponderance of the evidence, that the defendant "visibly possessed a firearm" during the commission of the offense. Significantly, we emphasized that the statute at issue "neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm." *Id.*, at 87–88. That is, the statute "simply took one factor that has always been considered by sentencing courts to bear on punishment—the instrumentality used in committing a violent felony—and dictated the precise weight to be given that factor if the instrumentality is a firearm." *Id.*, at 89–90. For this reason, we approved the lesser standard of proof provided for in the statute, thereby "reject[ing] the claim that whenever a State links the 'severity of punishment' to 'the presence or absence of an identified fact' the State must prove that fact beyond a reasonable doubt." *Id.*, at 84 (quoting *Patterson* v. *New York*, 432 U. S. 197, 214 (1977)). These decisions reinforce our conclusion that consideration of information about the defendant's character and conduct at sentencing does not result in "punishment" for any offense other than the one of which the defendant was convicted.

We are not persuaded by petitioner's suggestion that the Sentencing Guidelines somehow change the constitutional analysis. A defendant has not been "punished" any more for double jeopardy purposes when relevant conduct is included in the calculation of his offense level under the Guidelines than when a pre-Guidelines court, in its discretion, took similar uncharged conduct into account. Cf. *McMillan, supra,* at 92 (perceiving no difference in the due process cal-

culus depending upon whether consideration of the sentencing factor was discretionary or mandatory). As the Government argues, "[t]he fact that the sentencing process has become more transparent under the Guidelines . . . does not mean that the defendant is now being 'punished' for uncharged relevant conduct as though it were a distinct criminal 'offense.'" Brief for United States 23. The relevant conduct provisions are designed to channel the sentencing discretion of the district courts and to make mandatory the consideration of factors that previously would have been optional. *United States* v. *Wright*, 873 F. 2d 437, 441 (CA1 1989) (Breyer, J.) (explaining that, "very roughly speaking, [relevant conduct] corresponds to those actions and circumstances that courts typically took into account when sentencing prior to the Guidelines' enactment"). See also *Burns* v. *United States*, 501 U. S. 129, 133 (1991); *Mistretta* v. *United States*, 488 U. S. 361, 363–367 (1989). Regardless of whether particular conduct is taken into account by rule or as an act of discretion, the defendant is still being punished only for the offense of conviction.

JUSTICE STEVENS disagrees with our conclusion because, he contends, "[u]nder the Guidelines, . . . an offense that is included as 'relevant conduct' does not relate to the character of the offender (which is reflected instead by criminal history), but rather measures only the character of the offense." *Post*, at 411. The criminal history section of the Guidelines, however, does not seem to create this bright line distinction; indeed, the difference between "criminal history" and "relevant conduct" is more temporal than qualitative, with the former referring simply to a defendant's *past* criminal conduct (as evidenced by convictions and prison terms), see USSG § 4A1.1, and the latter covering activity arising out of the same course of criminal conduct as the instant offense, see USSG § 1B1.3.

To the extent that the Guidelines aggravate punishment for related conduct outside the elements of the crime on the

theory that such conduct bears on the "character of the of-
fense," the offender is still punished only for the fact that the
*present* offense was carried out in a manner that warrants
increased punishment, not for a *different* offense (which that
related conduct may or may not constitute). But, while rel-
evant conduct thus may relate to the severity of the particu-
lar crime, the commission of multiple offenses in the same
course of conduct also necessarily provides important evi-
dence that the character of the offender requires special pun-
ishment. Similarly, as we have said in the recidivism cases,
a crime committed by an offender with a prior conviction "is
considered to be an aggravated offense because a repetitive
one." *Gryger,* 334 U. S., at 732. Nothing about the labels
given to these categories controls the use to which such
information is put at sentencing. Under the Guidelines,
therefore, as under the traditional sentencing regimes Jus-
TICE STEVENS approves, "it is difficult if not impossible to
determine whether a given offense has affected the judge's
assessment of the character of the offender, the character of
the offense, or both." *Post,* at 411 (STEVENS, J., dissenting).
Even under JUSTICE STEVENS' framework, the structure of
the Guidelines should not affect the outcome of this case.

The relevant conduct provisions of the Sentencing Guide-
lines, like their criminal history counterparts and the recidi-
vism statutes discussed above, are sentencing enhancement
regimes evincing the judgment that a particular offense
should receive a more serious sentence within the authorized
range if it was either accompanied by or preceded by addi-
tional criminal activity. Petitioner does not argue that the
range fixed by Congress is so broad, and the enhancing role
played by the relevant conduct so significant, that consider-
ation of that conduct in sentencing has become "a tail which
wags the dog of the substantive offense." *McMillan,* 477
U. S., at 88; cf. *Mullaney* v. *Wilbur,* 421 U. S. 684, 700 (1975).
We hold that, where the legislature has authorized such a
particular punishment range for a given crime, the resulting

sentence within that range constitutes punishment only for the offense of conviction for purposes of the double jeopardy inquiry. Accordingly, the instant prosecution for the cocaine offenses is not barred by the Double Jeopardy Clause as a second attempt to punish petitioner for the same crime.

## III

At its core, much of petitioner's argument addresses not a claim that the instant cocaine prosecution violates principles of double jeopardy, but the more modest contention that he should not receive a second sentence under the Guidelines for the cocaine activities that were considered as relevant conduct for the marijuana sentence. As an examination of the pertinent sections should make clear, however, the Guidelines take into account the potential unfairness with which petitioner is concerned.

Petitioner argues that the Sentencing Guidelines require that drug offenders be sentenced in a single proceeding for all related offenses, whether charged or uncharged. See Brief for Petitioner 20–23. Yet while the Guidelines certainly envision that sentences for multiple offenses arising out of the same criminal activity *ordinarily* will be imposed together, they also explicitly contemplate the possibility of separate prosecutions involving the same or overlapping "relevant conduct." See USSG § 5G1.3, comment., n. 2 (addressing cases in which "a defendant is prosecuted in . . . two or more federal jurisdictions, for the same criminal conduct or for different criminal transactions that were part of the same course of conduct"). There are often valid reasons why related crimes committed by the same defendant are not prosecuted in the same proceeding, and § 5G1.3 of the Guidelines attempts to achieve some coordination of sentences imposed in such situations with an eye toward having such punishments approximate the total penalty that would have been imposed had the sentences for the different offenses been imposed at the same time (*i. e.*, had all

of the offenses been prosecuted in a single proceeding). See USSG § 5G1.3, comment., n. 3.

Because the concept of relevant conduct under the Guidelines is reciprocal, § 5G1.3 operates to mitigate the possibility that the fortuity of two separate prosecutions will grossly increase a defendant's sentence. If a defendant is serving an undischarged term of imprisonment "result[ing] from offense(s) that have been fully taken into account [as relevant conduct] in the determination of the offense level for the instant offense," § 5G1.3(b) provides that "the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment." And where § 5G1.3(b) does not apply, an accompanying policy statement provides, "the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense." USSG § 5G1.3(c) (policy statement). Significant safeguards built into the Sentencing Guidelines therefore protect petitioner against having the length of his sentence multiplied by duplicative consideration of the same criminal conduct; he would be able to vindicate his interests through appropriate appeals should the Guidelines be misapplied in any future sentencing proceeding.

Even if the Sentencing Commission had not formalized sentencing for multiple convictions in this way, district courts under the Guidelines retain enough flexibility in appropriate cases to take into account the fact that conduct underlying the offense at issue has previously been taken into account in sentencing for another offense. As the Commission has explained, "[u]nder 18 U. S. C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines

that should result in a sentence different from that described.'" USSG § 5K2.0 (policy statement). This departure power is also available to protect against petitioner's second major practical concern: that a second sentence for the same relevant conduct may deprive him of the effect of the downward departure under § 5K1.1 of the Guidelines for substantial assistance to the Government, which reduced his first sentence significantly. Should petitioner be convicted of the cocaine charges, he will be free to put his argument concerning the unusual facts of this case to the sentencing judge as a basis for discretionary downward departure.

## IV

Because consideration of relevant conduct in determining a defendant's sentence within the legislatively authorized punishment range does not constitute punishment for that conduct, the instant prosecution does not violate the Double Jeopardy Clause's prohibition against the imposition of multiple punishments for the same offense. Accordingly, the judgment of the Court of Appeals is

*Affirmed.*

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, concurring in the judgment.

This is one of those areas in which I believe our jurisprudence is not only wrong but unworkable as well, and so persist in my refusal to give that jurisprudence *stare decisis* effect. See *Planned Parenthood of Southeastern Pa.* v. *Casey,* 505 U. S. 833, 982–984, 993–994 (1992) (SCALIA, J., concurring in judgment in part and dissenting in part); *Walton* v. *Arizona,* 497 U. S. 639, 673 (1990) (SCALIA, J., concurring in part and concurring in judgment).

It is not true that (as the Court claims) "the language of the Double Jeopardy Clause protects against . . . the actual imposition of two punishments for the same offense." *Ante,* at 396. What the Clause says is that no person "shall . . . be

subject for the same offence to be twice *put in jeopardy* of life or limb," U. S. Const., Amdt. 5 (emphasis added), which means twice *prosecuted* for the same offense. Today's decision shows that departing from the text of the Clause, and from the constant tradition regarding its meaning, as we did six years ago in *United States* v. *Halper,* 490 U. S. 435 (1989), requires us either to upset well-established penal practices, or else to perceive lines that do not really exist. Having created a right against multiple punishments *ex nihilo,* we now allow that right to be destroyed by the technique used on the petitioner here: "We do not punish you twice for the *same* offense," says the Government, "but we punish you *twice as much* for *one* offense solely because you also committed another offense, for which other offense we will also punish you (only once) later on." I see no real difference in that distinction, and decline to acquiesce in the erroneous holding that drives us to it.

In sum, I adhere to my view that "the Double Jeopardy Clause prohibits successive prosecution, not successive punishment." *Department of Revenue of Mont.* v. *Kurth Ranch,* 511 U. S. 767, 804–805 (1994) (SCALIA, J., dissenting). Since petitioner was not twice prosecuted for the same offense, I concur in the judgment.

JUSTICE STEVENS, concurring in part and dissenting in part.

Petitioner pleaded guilty to attempting to possess with intent to distribute more than 100 kilograms of marijuana. At petitioner's sentencing hearing, the District Court heard evidence concerning petitioner's participation in a conspiracy to import cocaine. Pursuant to its understanding of the United States Sentencing Guidelines, the District Court considered the cocaine offenses as "relevant conduct" and increased petitioner's sentence accordingly. Petitioner received exactly the same sentence that he would have received had he been convicted of both the marijuana offenses and the cocaine of-

fenses. The Government then sought to prosecute petitioner for the cocaine offenses.

The question presented is whether the Double Jeopardy Clause bars that subsequent prosecution. The Court today holds that it does not. In my view, the Court's holding is incorrect and unprecedented. More importantly, it weakens the fundamental protections the Double Jeopardy Clause was intended to provide.

I

In my view, the double jeopardy violation is plain. Petitioner's marijuana conviction, which involved 1,000 pounds of marijuana, would have resulted in a Guidelines range of 78 to 97 months. When petitioner's cocaine offenses were considered in the sentencing calculus, the new Guidelines range was 292 to 365 months. This was the range that the District Court used as the basis for its sentencing calculations.[1] Thus, the District Court's consideration of the cocaine offenses increased petitioner's sentencing range by over 200 months.

Under these facts, it is hard to see how the Double Jeopardy Clause is not implicated. In my view, quite simply, petitioner was put in jeopardy of punishment for the cocaine transactions when, as mandated by the Guidelines, he was in fact punished for those offenses. The Double Jeopardy Clause should thus preclude any subsequent prosecution for those cocaine offenses.

II

Despite the intuitive appeal of this approach, the majority concludes that these facts do not implicate the Double Jeopardy Clause. To reach this conclusion, the majority relies

---

[1] After making offsetting adjustments for an aggravating role in the offense and for acceptance of responsibility, the District Court, pursuant to United States Sentencing Commission, Guidelines Manual § 5K1.1, departed downward by 148 months and sentenced petitioner to 144 months' imprisonment.

on our prior decisions that have permitted sentencers to consider at sentencing both prior convictions and other offenses that are related to the offense of conviction. The majority's reliance on these cases suggests that it has overlooked a distinction that I find critical to the resolution of the double jeopardy issue at hand.

"Traditionally, sentencing judges have considered a wide variety of factors in addition to evidence bearing on guilt in determining what sentence to impose on a convicted defendant." *Wisconsin* v. *Mitchell*, 508 U. S. 476, 485 (1993). "One such important factor" to be considered in the sentencing calculus is "a defendant's prior convictions." *Nichols* v. *United States*, 511 U. S. 738, 747 (1994). Indeed, the prominent role played by past conduct in most guidelines-based sentencing regimes and in statutes that punish more harshly "habitual offenders" reveals the importance of this factor. As the majority notes, we have repeatedly upheld the use of such prior convictions against double jeopardy challenges. See *ante,* at 400 (citing cases). However, an understanding of the reason for our rejection of those challenges makes clear that those cases do not support the majority's conclusion.

Traditional sentencing practices recognize that a just sentence is determined in part by the character of the offense and in part by the character of the offender. Within this framework, the admission of evidence of an offender's past convictions reflects the longstanding notion that one's prior record is strong evidence of one's character. A recidivist should be punished more severely than a first offender because he has failed to mend his ways after a first conviction. As we noted in *Moore* v. *Missouri*, 159 U. S. 673, 677 (1895), "'the punishment for the second [offense] is increased, because by his persistence in the perpetration of crime, [the defendant] has evinced a depravity, which merits a greater punishment, and needs to be restrained by severer penalties than if it were his first offence.'" See also *McDonald* v.

*Massachusetts*, 180 U. S. 311, 313 (1901) (commission of a second crime after conviction for first "show[s] that the man is an habitual criminal"). Thus, when a sentencing judge reviews an offender's prior convictions at sentencing, the judge is not punishing that offender a second time for his past misconduct, but rather is evaluating the nature of his individual responsibility for past acts and the likelihood that he will engage in future misconduct. Recidivist statutes are consistent with the Double Jeopardy Clause not because of the formalistic premise that one can only be punished or placed in jeopardy for the "offense of conviction," but rather because of the important functional understanding that the purpose of the prior conviction is to provide valuable evidence as to the offender's character. The majority's reliance on recidivist statutes is thus unavailing.

When the offenses considered at sentencing are somehow linked to the offense of conviction, the analysis is different. Offenses that are linked to the offense of conviction may affect both the character of the offense and the character of the offender. That is, even if he is not a recidivist, a person who commits two offenses should also be punished more severely than one who commits only one, in part because the commission of multiple offenses provides important evidence that the character of the offender requires special punishment, and in part because the character of the offense is aggravated by the commission of multiple offenses. Insofar as a sentencer relies on an offense as evidence of character, the Double Jeopardy Clause is not implicated. However, insofar as the sentencer relies on the offense as aggravation of the underlying offense, the Double Jeopardy Clause is necessarily implicated. At that point, the defendant is being punished for having committed the offense at issue, and not for what the commission of that offense reveals about his character. In such cases, the defendant has been "put in jeopardy" of punishment for the offense because he has in fact been punished for that offense.

Under many sentencing regimes, of course, it is difficult if not impossible to determine whether a given offense has affected the judge's assessment of the character of the offender, the character of the offense, or both. However, under the federal Sentencing Guidelines, the role played by each item in the sentencing calculus is perfectly clear. The Guidelines provide for specific sentencing adjustments for "criminal history" (*i. e.*, character of the offender) and for "relevant conduct" (*i. e.*, character of the offense). Under the Guidelines, therefore, an offense that is included as "relevant conduct" does not relate to the character of the offender (which is reflected instead by criminal history), but rather measures only the character of the offense. Even if all other mitigating and aggravating circumstances that shed light on an offender's character have been taken into account, the judge must sentence the offender for conduct that affects the seriousness of the offense.

The effect of this regime with respect to drug crimes provides a particularly striking illustration of why this mandatory consideration of relevant conduct implicates the Double Jeopardy Clause under anything but a formalistic reading of the Clause. Under the Guidelines, the severity of a drug offense is measured by the total quantity of drugs under all offenses that constitute "relevant conduct," regardless of whether those offenses were charged and proved at the guilt phase of the trial or instead proved at the sentencing hearing. For example, as I have noted above, petitioner's Guidelines range was determined by adding the quantity of marijuana to the quantity of cocaine (using the conversion formula set forth in the Guidelines). Petitioner has thus already been sentenced for an actual offense that includes the cocaine transactions that are the subject of the second indictment. Those transactions played precisely the same role in fixing his punishment as they would have if they had been the subject of a formal charge and conviction. The actual imposition of that punishment must surely demonstrate that

petitioner was just as much in jeopardy for the offense as if he had been previously charged with it.

In sum, traditional sentencing practice does not offend the Double Jeopardy Clause because (1) past convictions are used only as evidence of the character of the offender, and not as evidence of the character of the offense, and (2) in traditional sentencing regimes, it is impossible to determine for what purpose the sentencer has relied on the relevant offenses. In my view, the Court's failure to recognize the critical distinction between the character of the offender and the character of the offense, as well as the Court's failure to recognize the change in sentencing practices caused by the Guidelines, cause it to overlook an important and obvious violation of the Double Jeopardy Clause.

## III

Once this error in the majority's analysis is recognized, it becomes apparent that none of the cases on which the majority relies compels today's novel holding. In *Williams* v. *New York*, 337 U. S. 241 (1949), the Court held that the Due Process Clause did not prevent a sentencing judge from considering information contained in a presentence report. The Court's conclusion in *Williams* is consistent with my approach. The *Williams* Court repeatedly emphasized that the information in the presentence report provided the court with relevant information about the character of the defendant. For example, the Court noted that "the New York statutes emphasize a prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime." The Court continued: "The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender." Finally, the Court observed that "[t]oday's philosophy of individualizing sentences makes sharp distinctions for example between first and repeated

offenders." *Id.*, at 247–248. Thus, the entire rationale of the *Williams* opinion focused on the importance of evidence that reveals the character of the offender. Not a word in Justice Black's opinion even suggests that if evidence adduced at sentencing were used to support a sentence for an offense more serious than the offense of conviction, the defendant would not have been placed in jeopardy for that more serious offense.[2]

The Court also relies on *McMillan* v. *Pennsylvania*, 477 U. S. 79 (1986), suggesting that *McMillan* "necessarily impl[ies]" that consideration of "offender-specific information at sentencing" does not "result in 'punishment for such conduct.'" *Ante*, at 400–401. I believed at the time and continue to believe that *McMillan* was wrongly decided. However, even accepting the Court's conclusion in *McMillan*, that case does not support the majority's position. In *United States* v. *Halper*, 490 U. S. 435, 448 (1989), and *Department of Revenue of Mont.* v. *Kurth Ranch*, 511 U. S. 767, 779–780 (1994), we emphatically rejected the proposition that punishment under the Double Jeopardy Clause only occurs when a court imposes a sentence for an offense that is proven beyond a reasonable doubt at a criminal trial.

The case on which the Court places its principal reliance, *Williams* v. *Oklahoma*, 358 U. S. 576 (1959), is not controlling precedent. *Williams* was decided over 10 years before the Court held in *Benton* v. *Maryland*, 395 U. S. 784 (1969), that the Double Jeopardy Clause "should apply to the States through the Fourteenth Amendment." *Id.*, at 794. Thus, *Williams* did not even apply the Double Jeopardy Clause

---

[2] The majority's reliance on *Nichols* v. *United States*, 511 U. S. 738 (1994), is similarly unavailing. In *Nichols*, the Court permitted the inclusion of an uncounseled misdemeanor conviction in the calculation of a defendant's criminal history. However, as I have noted above, the inclusion of an offense in criminal history for sentencing purposes treats that offense as relevant to the character of the offender rather than to the character of the offense.

and instead applied only a "watered-down" version of due process, see *Benton,* 395 U. S., at 796. Moreover, in *Williams,* the State's discretionary sentencing scheme was entirely dissimilar to the federal Sentencing Guidelines, which require that "relevant conduct" be punished as if it had been proved beyond a reasonable doubt. The Court is therefore free to accept or reject the majority's reasoning in *Williams.*

The precise issue resolved in *Williams* is also somewhat different from that presented in today's case. In *Williams,* the petitioner committed two offenses, kidnaping and murder, arising out of the same incident. Though petitioner was convicted of capital murder, the judge imposed a sentence of life imprisonment. There is no reason to believe that the judge considered the kidnaping offense as relevant conduct in sentencing petitioner for the murder. Williams was then prosecuted for kidnaping. He did not raise a double jeopardy objection to the kidnaping prosecution—an objection that would have been comparable to petitioner's claim in this case regarding his cocaine prosecution. After Williams pleaded guilty to the kidnaping, the court considered the circumstances of the crime, including the murder, and imposed a death sentence. This Court affirmed. I agree with Justice Douglas' dissent that "petitioner was in substance tried for murder twice in violation of the guarantee against double jeopardy." 358 U. S., at 587. In any event, I surely would not apply the *Williams* Court's dubious reasoning to a federal sentence imposed under the Guidelines.[3]

---

[3] I recognize that the Court in *Williams* stated that "the court's consideration of the murder as a circumstance involved in the kidnapping crime cannot be said to have resulted in punishing petitioner a second time for the same offense." 358 U. S., at 586. As I note in the text, I disagree with this statement. But even if it were correct, it does not dispose of petitioner's claim that he is being *prosecuted* for the cocaine offense a second time. The statement in *Williams* is directed only at the use of a prior conviction in a *subsequent sentencing proceeding;* it does not address whether the second *prosecution* is barred by the fact that the defendant has already been punished for the offense to be prosecuted.

Given the absence of precedent requiring the majority's unjust result, the case should be decided by giving effect to the text and purpose of the Double Jeopardy Clause. Petitioner received the sentence authorized by law for the offense of attempting to import cocaine. Petitioner is now being placed in jeopardy of a second punishment for the same offense. Requiring him to stand trial for that offense is a manifest violation of the Double Jeopardy Clause.

## IV

Though the majority's holding in Parts I and II removes the Double Jeopardy Clause as a constitutional bar to petitioner's second punishment, the majority does recognize that the provisions of the Sentencing Guidelines reduce the likelihood of a second punishment as a practical matter. The Guidelines will generally ensure that the total sentence received in the two proceedings is the same sentence that would have been received had both offenses been brought in the same proceeding. Moreover, as the majority notes, the departure power is available to protect against unwarranted double punishment, see *ante*, at 405–406, as well as to prevent any possibility that "a second sentence for the same relevant conduct may deprive [a defendant] of the effect of the downward departure under § 5K1.1 of the Guidelines for substantial assistance to the Government," *ante*, at 406.[4]

The Court's statutory holding thus mitigates some of the otherwise unfortunate results of its constitutional approach. More importantly, the Court's statutory analysis is obviously correct. Accordingly, I join Part III of the Court's opinion.

---

[4] Of course, the safeguards in the Guidelines do not eliminate the double jeopardy violation. The Double Jeopardy Clause protects against the burdens incident to a second trial, and not just against the imposition of a second punishment. Moreover, a "second conviction, even if it results in no greater sentence, is an impermissible punishment." *Ball* v. *United States*, 470 U. S. 856, 865 (1985).

## V

In my view, the Double Jeopardy Clause precludes petitioner's subsequent prosecution for the cocaine offenses because petitioner was placed in jeopardy when he was punished for those offenses following his conviction for the marijuana offenses. I therefore join only Part III of the Court's opinion, and I respectfully dissent from the Court's judgment.