**William T. MAYO, Jr., Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

No. 19S00–9609–CR–596.

Supreme Court of Indiana.

June 12, 1997.

Scott A. Blazey, Lytton and Ripstra, Jasper, for Defendant–Appellant.

Pamela Carter, Jeffrey Modisett, Attorney General, Christopher L. LaFuse, Deputy At-

torney General, Indianapolis, for Plaintiff–Appellee.

DICKSON, Justice.

The defendant, William Mayo, Jr., appeals his convictions for Rape as a Class A felony, Burglary as a Class A felony, Confinement as a Class B felony, and the imposition of a habitual offender enhancement. Under the sentencing statutes in force at the time of the crime, the trial court imposed the presumptive ten year sentence on the Class B felony and found aggravating factors warranting the addition of five years to the presumptive twenty-five year sentences for each of the Class A felonies. The court then applied a thirty year habitual offender enhancement to the rape conviction and ordered the sentences to run concurrently for a total executed sentence of sixty years.

The defendant now alleges six errors: (1) insufficient evidence to sustain the convictions on the confinement, burglary, and rape charges; (2) refusal to instruct the jury on confinement as a Class D felony; (3) admission of certain identification evidence at trial; (4) insufficient evidence to sustain the habitual offender finding; (5) violation of the Double Jeopardy Clause; and (6) excessive sentence. We affirm.

### Sufficiency of the Evidence
### for Convictions

The defendant claims that the evidence was insufficient to support his convictions for rape, burglary, and criminal confinement. An appellate claim of insufficient evidence will prevail if, considering the probative evidence and reasonable inferences that support the judgment, and without weighing evidence or assessing witness credibility, we conclude that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Case v. State,* 458 N.E.2d 223, 226 (Ind.1984); *Loyd v. State,* 272 Ind. 404, 407, 398 N.E.2d 1260, 1264 (1980), *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

The evidence most favorable to the judgment reveals that the defendant had a relationship with the victim for approximately six months before she broke up with him. Thereafter, he was unsuccessful in his continued attempts to date her, and, on February 6, 1995, the victim was in her home around noon when the defendant kicked down the locked back door and entered her house, telling her that "we need to talk." Record at 370. At that point he pulled out a pistol. As she struggled with him over the gun, he struck her in the eye and regained control over the gun. Although they stopped fighting long enough for her to get a washcloth for her face, he refused to leave when she asked him. The struggle resumed, with the victim trying to escape and the defendant preventing her from doing so. At some point during the struggle the victim threw the gun into the basement. The defendant pushed her into her bedroom and used duct tape he had brought with him and a phone cord to restrain her arms, legs, and mouth. He took her to the basement, retrieved his gun, and told the victim that if she had not broken up with him he wouldn't have hurt her and come back after her. He then had intercourse with her without her consent and left. The victim then freed herself and called the police.

Burglary is defined as follows: "A person who breaks and enters the building or structure of another person with intent to commit a felony in it, commits burglary ... the offense is ... a Class A felony if it results in either bodily injury or serious bodily injury to any person other than a defendant." IND.CODE § 35–43–2–1 (1993). The evidence supports the defendant's conviction for burglary. Kicking down a locked door and walking through it constitutes a breaking and entering. It is undisputed that it was the house of the victim and not the defendant. Furthermore, the evidence was sufficient here to support a reasonable inference that the defendant intended to commit a violent attack by his method of entry into the home, the fact that he produced the gun initially, the fact that he brought duct tape with him, and his statements to the victim that he wouldn't have "come after" her had she not broken up with him. Finally, the existence of an injury was supported by the victim's testimony and photographs taken of the victim's face right after the incident took place.

■ The statute defines rape as follows: "A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when: (1) The other person is compelled by force or threat of force ... commits rape ... the offense is a Class A felony if it is committed ... while armed with a deadly weapon." IND.CODE § 35–42–4–1 (1993). The uncorroborated testimony of a victim alone is sufficient to convict. *Ferrell v. State*, 565 N.E.2d 1070, 1072–73 (Ind.1991). Here the victim testified that the defendant bound her, had intercourse with her without her consent, and had a pistol with him at the time. The evidence is sufficient to support the defendant's conviction for rape as a Class A felony.

■ The defendant also contends that the evidence was insufficient to convict him for confinement because "[t]here was not a confinement in addition to the confinement inherently present in the rape." Brief of Appellant at 9. The defendant contends that the federal Double Jeopardy Clause is violated when the same acts that constitute the confinement comprised the force used for another offense. However, as in *Brown v. State*, 671 N.E.2d 401, 410 (Ind.1996), double jeopardy is not implicated here because there was a confinement completely separate from the rape. The statute defines criminal confinement as follows: "A person who knowingly or intentionally: (1) Confines another person without the person's consent ... commits criminal confinement ... the offense is ... a Class B felony if it is committed while armed with a deadly weapon." IND.CODE § 35–42–3–3 (1993). Confinement is defined as substantially interfering with the liberty of a person. IND.CODE § 35–42–3–1 (1993). Here the evidence supports the fact that a confinement took place separate from the rape. The defendant, while retaining control of the pistol for at least some of the time, prevented the victim from leaving the house and then subsequently confined her again in order to commit the rape.

The evidence was sufficient to support the convictions for rape, burglary, and criminal confinement.

### Instruction on Criminal Confinement as a Class D Felony

The defendant contends that the trial court erroneously refused to instruct the jury on criminal confinement as a Class D felony. However, the record does not support his contention. The trial court specifically instructed the jury on both the elements of criminal confinement as a Class D felony and as a Class B felony. Record at 220, 841. Furthermore, the trial court gave the jurors verdict forms on criminal confinement as both a Class B felony and Class D felony. Record at 251–52. We find no error as to this issue.

### Admission of Identification Evidence

■ At trial the State introduced a witness who worked at a local store. She testified that store employees kept a record, on the cash register tape, of the driver's license number of everyone who paid by check. The employees also followed a procedure of checking the driver's license picture with the person who presented the license. Based upon her testimony, the State introduced a cash register tape recorded by the witness on the morning of February 6, 1995, which had the defendant's driver's license number and showed an attempted purchase of duct tape, a utility knife, and some twine. However, the witness could not visually identify the defendant as the one who sought to purchase the items.

The defendant argues on appeal that the probative value of this testimony is outweighed by its prejudicial effect. Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Ind.Evidence Rule 403. The defendant's trial objection asserted that, because the witness could not recall seeing the defendant at the time of the transaction, the information on the register tape could have been provided by another person, and that the evidence is "highly prejudicial." Record at 574.

We understand the defendant's contention to be that the probative value of the register tape was minimal because of the possibility that it was the product of a person other than the defendant, but that it presented a substantial danger of unfair prejudice "by

suggesting that the employee could identify" the defendant. Brief of Appellant at 12–13. We find this claimed inference did not present a substantial danger of unfair prejudice. Moreover, the witness admitted she could not visually identify the defendant and testified in a limited fashion as to the normal business procedures that employees followed and a cash register tape was admitted in accordance with that testimony. Such evidence could not have misled the jury into thinking that the witness could identify the defendant to any extent further than what she testified.

An appellate claim of an erroneous evidentiary ruling will not prevail "unless a substantial right of the party is affected." Ind.Evidence Rule 103(a). The standard of review of such claims is for abuse of discretion. *Yamobi v. State*, 672 N.E.2d 1344, 1346 (Ind.1996). We decline to find that the trial court abused its discretion in admitting the register tape evidence.

### Habitual Offender Enhancement

The defendant's habitual offender enhancements were based upon two prior Alabama convictions. He claims that the enhancement was improperly imposed because (1) the two convictions were not unrelated; and (2) there was no proof that one of them, an escape conviction, was a felony.

In his first argument, the defendant claims that the convictions for escape and burglary in Alabama were related. The habitual offender statute requires the State to prove "that the person has accumulated two (2) prior *unrelated* felony convictions." IND. CODE § 35–50–2–8 (1993) (emphasis added). We have held that the State need only prove that the defendant was twice convicted and sentenced for felonies, where the commission of the second was after sentencing for the first offense, and where the current underlying offense was committed after sentencing for the second offense. *Webster v. State*, 628 N.E.2d 1212, 1214–15 (Ind.1994).

■ The defendant argues that the two convictions are intertwined, and therefore not unrelated felonies, because his second conviction was for an escape made while serving a sentence for the first prior felony, the burglary, and because the sentence for the second felony was ordered to run retroactively from the date of the first felony. We reject this construction of the statute. All the statute requires is that the second felony be committed after the sentencing for the first felony conviction. Here the defendant was convicted, sentenced, and was serving his time for the first felony conviction when he committed the second offense, and thus it meets our requirement of two prior unrelated felonies.

■ The defendant next argues that there was no proof that the conviction in Alabama for second degree escape was a felony within the meaning of our statute. A felony conviction is defined as "a conviction, in any jurisdiction at any time, with respect to which the convicted person might have been imprisoned for more than one (1) year." IND.CODE § 35–50–2–1(b) (1993). Judicial notice may be taken of the law of another state "at any stage of the proceeding." Ind.Evidence Rule 201(b), (f). We now take judicial notice that the Alabama statute in force provided that second degree escape, or escape from a penal facility, was classified as a C felony. ALA. CODE § 13A–10–32 (Michie 1994). The sentence for a C felony at that time was "not more than 10 years or less than 1 year and 1 day." ALA.CODE § 13A–5–6(a)(3) (Michie 1994). This constitutes a felony under our habitual offender statute. We find no error on this issue.

### Double Jeopardy

■ The defendant previously had been sentenced as a habitual offender in Alabama based, in part, upon the conviction for second degree escape discussed above. This conviction was also used in Indiana as one of the prior felonies to impose the current habitual offender enhancement. The defendant contends that the repeated use of this conviction to impose subsequent habitual offender enhancements violates the Double Jeopardy Clause of the United States Constitution. U.S. CONST. amend. V.

In the past we have held that the use of a conviction in two different habitual offender proceedings does not violate double jeopardy. *See Mers v. State*, 496 N.E.2d 75, 77–80 (Ind.1986); *Baker v. State*, 425 N.E.2d 98,

100–101 (Ind.1981). However, the defendant now argues that we should extend our case law involving the Indiana Controlled Substance Excise Tax ("CSET") to subsequent habitual offender proceedings based on the same prior felonies. We held in *Bryant v. State*, 660 N.E.2d 290 (Ind.1995), *cert. denied* —— U.S. ——, 117 S.Ct. 293, 136 L.Ed.2d 213 (1996), that the CSET, although defined as a civil tax, was in effect a punishment for double jeopardy purposes and, therefore, could not be imposed in addition to a criminal conviction for possession of the same drugs upon which the CSET was imposed. *Id.* at 296–97. The defendant argues that, because the definition of a punishment has recently broadened to include such "taxes," this Court should now likewise consider the habitual offender enhancement as a punishment for double jeopardy purposes.

This misconstrues the nature of our holdings regarding the CSET. The essence of those cases is that the CSET was intended to be a *separate* punishment, as determined by the analysis of *Dep't of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). This analysis dealt specifically with determining whether a tax imposed in addition or prior to criminal convictions constitutes a separate punishment. However, the habitual offender finding is not a separate punishment, but rather an enhancement of the underlying conviction which allows for a longer term of imprisonment because the previous contacts with the justice system have failed to provide any meaningful deterrence to the defendant. *Baker*, 425 N.E.2d at 100.

■ Additionally, we note that the United States Supreme Court has consistently upheld recidivist or habitual offender statutes against double jeopardy claims. *Witte v. United States*, 515 U.S. 389, 400, 115 S.Ct. 2199, 2206, 132 L.Ed.2d 351, 364 (1995) (discussing the Court's consistent holdings regarding habitual offender statutes). "[T]he enhanced punishment imposed for the later offense 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes,' but instead as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive

one.'" *Id.* at 400, 115 S.Ct. at 2206, 132 L.Ed.2d at 364 (citations omitted). The Court, in discussing the history and validity of habitual offender statutes, found that "courts in this country ... practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." *Id.* at 397–398, 115 S.Ct. at 2205, 132 L.Ed.2d at 362–63 (quoting *Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 1082–83, 93 L.Ed. 1337, 1341 (1949)). Viewed in this way, the habitual offender statute merely provides the trial court an opportunity to impose a more severe sentence on a crime because of a history of criminality. It is not, however, a separate punishment for a separate offense.

We recognize that the facts in *Baker* and *Witte* are each distinguishable from the present case. In *Baker*, the defendant had previously been charged as a habitual offender, and that jury had declined to impose the habitual offender finding. In a later habitual proceeding he was found to be a habitual offender based on the same convictions as those used in the previous determination. In *Witte* the Court only spoke about the double jeopardy implications of using a prior conviction to impose a habitual offender enhancement, but did not discuss the implications of using a conviction more than once to impose a habitual enhancement.

In today's case we have a defendant with two different habitual offender enhancements based partially on the same prior conviction. However, the same rationale applies whether the defendant was first "acquitted" or twice found to be a habitual offender, or whether the defendant's prior convictions are used once or repeatedly, as we recognized in an analogous case, *Williams v. State*, 430 N.E.2d 759, 768 (Ind.1982). The enhancement has the same effect in all of these settings: it merely considers a defendant's persistent criminal conduct, an altogether appropriate consideration for determining a sentence. The fact that subsequent habitual offender enhancements have been applied based upon the same conviction does not

additionally penalize the defendant for the earlier crime. We decline the defendant's request to depart from our precedent on this issue.

### Length of Sentence

Challenging the imposition of consecutive terms on enhanced sentences, the defendant's argument essentially raises two separate issues: 1) whether the trial court erred in its consideration of aggravating and mitigating circumstances; and 2) whether the resulting sentences are manifestly unreasonable. The first issue presents a claim of legal error by the sentencing court. The second seeks discretionary appellate review pursuant to Indiana Appellate Rule 17, which guides the exercise of our power to review and revise otherwise lawful sentences. IND. CONST. art. 7, § 4.

■ The defendant contends that the trial court erroneously found no mitigating circumstances despite evidence that his prior criminal convictions were nonviolent crimes against property. He additionally asserts that using the same aggravators for multiple enhancements and imposition of consecutive terms is manifestly unreasonable. While the absence of a "history of delinquency or criminal activity" is an expressly permitted mitigating consideration, the existence of criminal history which is nonviolent is not specifically recognized as a mitigating factor. IND.CODE § 35–38–1–7.1(c)(6) (1993). A trial court may accord such matter mitigating weight, but there is no duty to make an affirmative finding expressly negating it as a mitigating circumstance. *Hammons v. State*, 493 N.E.2d 1250, 1255 (Ind.1986).

■ With respect to the claim of overall sentence unreasonableness, we will not revise a sentence authorized by statute unless we find it "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind.Appellate Rule 17(B). While we recognize that the aggregate sentence is substantial, we do not find the degree of claimed unreasonableness so clearly apparent as to warrant our concluding that it is *manifestly* unreasonable. We find no sentencing error and decline to revise the sentence.

### Conclusion

The judgment of the trial court is affirmed.

SULLIVAN, SELBY and BOEHM, JJ., concur.

SHEPARD, C.J., concurs with separate opinion.

SHEPARD, Chief Justice, concurring.

Mayo's contention that his two Alabama convictions are "related" for purposes of Indiana's habitual offender statute presents an intriguing question, but we are too late in the day to consider it.

The statutory provision at issue, Ind.Code § 35–50–2–8, hardly articulates the requirements recited in today's opinion (commission of the second offense after sentencing for the first offense, and so on). These detailed requirements became "what the statute requires" through judicial action in *Miller v. State*, 275 Ind. 454, 417 N.E.2d 339 (1981). We have applied them in hundreds of cases since that announcement.

The *Miller* gloss is usually regarded as increasing the burden of the prosecution, imposing a requirement of proof more elaborate than the authors of the legislation likely intended. In this case, however, the door swings in the opposite direction. A prisoner with a semi-plausible claim that two of his priors were "related" finds himself unable to make much headway in light of the relatively mechanical rule of *Miller*.

Still, because we have enforced this rule so uniformly (and efficiently, the benefit of most bright line tests), to the apparent satisfaction of the General Assembly, I cannot justify turning back the clock. I thus join the Court in rejecting Mayo's claim.