NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3305
_____

UNITED STATES OF AMERICA

v.

JAIME CASTELLAR,
a/k/a RAFEAL RAMOS
a/k/a JAY

JAIME CASTELLAR,
                                    Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
District Court No. 2:07-cr -00756-002
District Judge: The Honorable Paul S. Diamond
_____

Submitted Under Third Circuit LAR 34.1(a)
October 28, 2011
_____

Before: SLOVITER, GREENAWAY, JR., and ALDISERT, *Circuit Judges.*

(Opinion Filed:  December 22, 2011)
_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

Jaime Castellar ("Castellar") pled guilty in the United States District Court for the Eastern District of Pennsylvania to one count of possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Prior to entering his guilty plea, Castellar had pled guilty to one count of conspiracy to distribute heroin, in violation of 21 U.S.C. § 846, in the United States District Court for the District of New Jersey (the "New Jersey case"). The District Court in the instant case (the "Pennsylvania case") determined that the two convictions were related and calculated Castellar's criminal history category and base offense level accordingly. The Court then imposed a sentence of 151 months of imprisonment, with credit for the 45 months and 15 days that Castellar had already served on the New Jersey case. The Court also ordered that the remainder of the New Jersey sentence run concurrently with the Pennsylvania sentence. On appeal, Castellar argues that the Pennsylvania sentence subjected him to double jeopardy, deprived him of the benefits of his cooperation, and violated his Fifth and Sixth Amendment rights.

None of these arguments has merit. We will affirm the sentence.

## I. BACKGROUND

Because we write primarily for the benefit of the parties, we recount only the essential facts.

In July 2006, police officers in Pennsauken, New Jersey, investigating a robbery and associated violence, entered a residence to look for additional victims. While inside the residence, they observed in plain view a large quantity of wax paper bags of the type used to package heroin. They obtained a search warrant and found 587.1 grams of heroin

2

and 309 grams of fentanyl. The house was leased by Castellar, who was eventually arrested. He pled guilty in the United States District Court for the District of New Jersey to one count of conspiracy to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1), and 846.[1] The Government filed a United States Sentencing Guidelines ("Guidelines") 5K1.1 motion based on Castellar's cooperation, and the Court agreed to depart downward, reducing the applicable Guidelines range from 97-121 months to 63-78 months. The Court then sentenced Castellar to 72 months of imprisonment, followed by five years of supervised release.

On September 28, 2006, after the warrant for Castellar's arrest in the New Jersey case was issued but before he was arrested, agents from the Federal Bureau of Investigation ("FBI") and officers from the Philadelphia Police Department knocked on the door of a Philadelphia residence that they suspected was being used to package heroin. The agents and officers were admitted to the residence, and they found Castellar in the kitchen. When he saw them, Castellar threw a baggie on the floor. The baggie was later determined to contain 49.91 grams of heroin. He was arrested. From elsewhere in the house, officers recovered 15.79 grams of heroin and various paraphernalia for packaging and distributing it. They also discovered four loaded guns and more than $3,000 in cash.

Castellar, along with his co-defendant Alexis Lugo, admitted involvement in a heroin distribution scheme. Castellar also told officers that he had moved the drug

---

[1] The case was docketed as Cr. No. 06-804-01.

3

operation from Pennsauken to Philadelphia after the July robbery. Castellar was indicted on one count of possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), based on the events in the Philadelphia residence. Castellar pled guilty, admitting that he possessed 70.11 grams of heroin on the day of the search.

The first presentence report found that Castellar's offense involved 70.11 grams of heroin, yielding a Guidelines total offense level of 22. After enhancements for possession of a firearm and playing a supervisory role in the offense and a reduction for acceptance of responsibility, Castellar's total offense level was 23. The Probation Office determined that Castellar had two prior convictions, one of which was the New Jersey conviction, placing him in criminal history category III. Taken together, these factors resulted in a Guidelines range of 57-71 months of imprisonment.

Castellar objected to the presentence report, arguing that the New Jersey conviction concerned related conduct and should therefore be excluded from the criminal history calculation. The Probation Office agreed and issued a revised presentence report, reducing the criminal history category to II. The revised report also added the drug quantities from the New Jersey case—587.1 grams of heroin and 309 grams of fentanyl— to the Pennsylvania quantities, pursuant to U.S.S.G. § 1B1.3(a)(2), which provides that acts "part of the same course of conduct . . . as the offense of conviction" be included in the base offense level calculation. With that addition, Castellar's total offense level was 33. Taken together, the revised factors resulted in a Guidelines range of 151-188 months, a ninety-four month increase in the minimum term of imprisonment.

At the sentencing hearing, the Court noted that, pursuant to U.S.S.G. § 5G1.3, if the two cases were indeed related, it would have to adjust the sentence in the Pennsylvania case for any period of imprisonment already served in the New Jersey case and order the Pennsylvania sentence to run concurrently with the remainder of the New Jersey sentence.[2] Castellar admitted that the offenses involved related conduct and an FBI agent testified to that effect. The Court then found the conduct to be related. The Court then found that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), did not apply, as Castellar argued, because *Apprendi* requires only that factual findings that increase the statutory maximum sentence be sent to the jury, and no facts here increased Castellar's sentence beyond the statutory maximum of twenty years. The Court also rejected his double jeopardy argument.

The Court adopted the Guidelines range of 151-188 months from the revised presentence report and determined that it would adjust the sentence to comply with U.S.S.G. § 5G1.3. After considering the 18 U.S.C. § 3553(a) factors, the Court sentenced Castellar to 151 months of imprisonment, less the 45 months and 13 days he had already served on the New Jersey conviction. The Court also ordered the Pennsylvania sentence to run concurrently with the New Jersey sentence.

---

[2] Section 5G1.3 provides, in relevant part, that where "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction . . . and that was the basis for an increase in the offense level for the instant offense . . . the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment . . . and the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment." U.S.S.G § 5G1.3(b).

## II.  JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231. This Court has jurisdiction over a challenge to the sentence under 18 U.S.C. § 3742(a). We review both the procedural and substantive reasonableness of a sentence imposed by the District Court for abuse of discretion.  *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009).  We review factual findings relevant to sentencing determinations for clear error and exercise plenary review over a district court's interpretation of the Guidelines. *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007).

## III.  ANALYSIS

We begin by disposing, in short order, of Castellar's double jeopardy and *Apprendi* arguments.

Castellar argues that, because he had already been prosecuted, convicted, and sentenced for the drug quantities in the New Jersey case, the inclusion of those quantities in the sentencing calculation in the Pennsylvania case violated the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States.  The Clause "serves the function of preventing both successive punishment and successive prosecution." *United States v. Dixon*, 509 U.S. 688, 704 (1993) (citing *North Carolina v. Pearce*, 395 U.S. 711 (1969)).  Nonetheless, the Supreme Court has held that "consideration of uncharged conduct in arriving at a sentence within the statutorily authorized punishment range" does not constitute punishment for that conduct for double jeopardy purposes.  *Witte v. United States*, 515 U.S. 389, 397 (1995); *see also id.* at 403-04 (finding that sentence within Guidelines range that includes past relevant criminal

6

conduct "constitutes punishment only for the offense of conviction for purposes of the double jeopardy inquiry"). Castellar's double jeopardy argument must therefore fail.

Castellar further contends that the inclusion of the related New Jersey conduct in the calculation of his Pennsylvania sentence violates the rule articulated by the Supreme Court in *Apprendi v. New Jersey*, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 530 U.S. at 490; *see also United States v. Booker*, 543 U.S. 220, 244 (2005) (reaffirming *Apprendi* rule). As the District Court in the instant case correctly noted, the statutory maximum penalty for Castellar's violation of 21 U.S.C. § 841(a)(1) was 20 years, or 240 months. 21 U.S.C. §841(b)(1)(C). The sentence did not exceed this statutory maximum. Hence, *Apprendi* is inapposite.[3]

Castellar's remaining contention is that the District Court "deprived Appellant of the benefits of his cooperation." (Appellant's Br. 5.) Without citing any case law, Castellar asserts that "fairness" required the District Court in the Pennsylvania case to grant the same four-level downward departure that the District Court in the New Jersey case had granted because, given that the sentences run concurrently, with no downward departure on the longer sentence, Castellar will not see any benefit from his cooperation.

---

[3] Further, as *Apprendi* states explicitly, the rule does not apply where, as here, the facts at issue have been admitted or found by a jury in the course of a prior conviction. *See* 530 U.S. at 490.

7

We treat this argument as an implicit challenge to the procedural and substantive reasonableness of his sentence, both of which we review for abuse of discretion. *Tomko*, 562 F.3d at 567. Inasmuch as Castellar asserts a procedural error, it appears to be that the District Court failed to adequately consider his earlier cooperation as a factor in sentencing, as allegedly required by 18 U.S.C. § 3553(a). The Court did, however, note among the factors it considered "that the defendant cooperated with New Jersey authorities." (App. 74.) Thus, the District Court committed no procedural error.

We affirm a procedurally sound sentence "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko*, 562 F.3d at 568. Where the record reflects rational and meaningful consideration of the § 3553(a) factors, we will affirm the sentence as substantively reasonable. *Id.* Here, the District Court considered Castellar's cooperation with authorities in the New Jersey case with the other § 3553(a) factors, including Castellar's background and personal history. The Court sentenced Castellar to 151 months, the minimum sentence available within the Guidelines range. Under the circumstances, we cannot find this decision to be unreasonable.

The Court also complied with U.S.S.G. § 5G1.3, ordering the sentences for related conduct to run concurrently, with credit to Castellar for the time already served in the New Jersey case. Section 5G1.3 attempts to ameliorate the potential unfairness "that the fortuity of two separate prosecutions [could] grossly increase a defendant's sentence." *United States v. Witte*, 515 U.S. 389, 405 (1995). Compliance with that provision, which

8

anticipates Castellar's circumstances, demonstrates that the District Court did not abuse its discretion in determining his sentence.

## IV. CONCLUSION

For the reasons set forth above, we will affirm the judgment of the District Court.