## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kenneth Williams,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 12, 2016

Court of Appeals Case No.
15A01-1511-CR-1899

Appeal from the Dearborn Circuit Court

The Honorable James D. Humphrey, Judge

Trial Court Cause No.
15C01-1410-F3-053

**Vaidik, Chief Judge.**

# Case Summary

Kenneth Williams was convicted of two counts of rape, attempted rape, criminal confinement, and being a habitual offender, and the trial court sentenced him to an aggregate term of fifty-two years.

Williams now appeals, arguing that the trial court erred in admitting into evidence phone calls he made from jail in which he offered the victim's family $4000 in exchange for the victim dropping the charges. He also argues that the evidence is insufficient to support his conviction for criminal confinement and that his sentence is inappropriate. Because we find substantial evidence of guilt apart from the phone calls, their admission does not require reversal. In addition, we conclude that the evidence is sufficient to support Williams's conviction for criminal confinement and that Williams has failed to persuade us that his fifty-two-year sentence is inappropriate in light of the nature of the offenses and his character. We affirm the trial court.

# Facts and Procedural History

J.S., who has struggled with drug addiction since she was a teenager, has stolen pain pills from her grandfather. Her grandfather lives in a house in Moores Hill, Indiana, with several other people, including Williams. Williams knew about J.S.'s addiction and had previously sent text messages to her, implying that he would trade pain pills for sex. But J.S. was not interested in the trade.

[4] On October 8, 2014, J.S. drove to her grandfather's house for a visit. She brought her one-year-old son and four-year-old nephew with her. J.S. left the children in the car and entered the house. She found that her grandfather was not there. While J.S. was walking down the hallway to leave, she encountered Williams, who was holding a cell phone, claiming that he was videotaping her for stealing pain pills from her grandfather.

[5] In the hallway, Williams tried to kiss J.S., but she told him no because the children were outside in the car. Williams then told her that she "wasn't going nowhere until [she] went and got on the bed." Tr. p. 132. Although J.S. kept asking Williams to let her go and tried to walk out of the house, Williams walked to the front door and locked it from the inside. While J.S. tried to make her way out, Williams blocked her in the dining room and told her to empty her pockets. After J.S. handed her driver's license and $30 in cash to Williams, he punched her in the mouth, causing swelling and bruising to her lips. Ex. 49, p. 193.

[6] Williams then told J.S. to take off her clothes. J.S. said no. He again told her to take off her clothes. When J.S. started to do so, Williams pulled her pants and underwear the rest of the way down. He kneeled down and started licking her vagina. Williams then stood up, turned J.S. around, and made her bend over the dining-room table. Williams told J.S. that "he was going to teach [her] a lesson." Tr. p. 138. Williams penetrated J.S.'s vagina from behind for about a minute and then tried to penetrate J.S.'s anus. At this point, J.S.'s nephew

started beating on the front door. Williams allowed J.S. to put on her clothes and leave.

[7] J.S. put her nephew back into her car and drove to a friend's house. J.S. then called 911 and went to the hospital for a sexual-assault examination. The nurse collected DNA samples from J.S. and her clothes. Williams's DNA was found on three cuttings of J.S.'s clothes and the anal swab. *Id.* at 233-39.

[8] On the same day, a detective conducted a recorded interview with Williams. Williams initially denied having any physical contact with J.S. But after the detective indicated that he did not believe Williams, Williams admitted that he placed his mouth on J.S.'s vagina and had sexual intercourse with her. However, he claimed that it was consensual.

[9] The State charged Williams with Count I: Level 3 felony rape (oral sex); Count II: Level 3 felony attempted rape (anal sex); Count III: Level 3 felony rape (sexual intercourse); Count IV: Level 6 felony criminal confinement; Count V: Level 5 felony criminal confinement (resulting in bodily injury); and Count VI: Class A misdemeanor battery resulting in bodily injury. The State later added Count VII: habitual offender. While in jail, Williams twice called a distant relative of J.S. and asked her to tell J.S.'s family that he would give them $4000 if she would "drop the charges." *Id.* at 275. At trial, this evidence was admitted over Williams's objection.

[10] The jury found Williams guilty of Counts I-VI. Williams then admitted that he was a habitual offender. Based on double-jeopardy considerations, the trial

court vacated Counts IV (Level 6 felony criminal confinement) and VI (battery resulting in bodily injury) and merged them into Count V (Level 5 felony criminal confinement). The trial court found three aggravating factors: (1) Williams's criminal history, including manslaughter for killing his three-month-old son and battery resulting in serious bodily injury to his wife; (2) Williams sought to pay J.S. through a third person to have the charges dropped; and (3) Williams destroyed property while he was in jail awaiting trial. The court found no mitigating factors. The court sentenced Williams to sixteen years for Count I, enhanced by twenty years for being a habitual offender, sixteen years for Count II, sixteen years for Count III, and six years for Count V. The court ordered Count I to be served consecutive to the other counts, for an aggregate sentence of fifty-two years.

[11] Williams now appeals.

# Discussion and Decision

[12] On appeal, Williams raises three issues. First, he argues that the trial court abused its discretion in admitting into evidence the phone calls he made from jail. Second, he asserts that the evidence is insufficient to support his conviction for criminal confinement. Third, he contends that his sentence is inappropriate.

## I. Admission of Evidence

[13] Williams first argues that the trial court abused its discretion in admitting into evidence the phone calls he made from jail in which he offered J.S.'s family

$4000 in exchange for her dropping the charges. Specifically, he argues that the prejudice from these phone calls outweighs the probative value because the phone calls "show Williams engaging in a new criminal act—bribing a witness," and imply that he "acted with a guilty conscious and was trying to buy his way out of trouble." Appellant's Br. p. 18.

[14] Even assuming that the trial court erred in admitting the phone calls into evidence, we find that the error was harmless. The improper admission of evidence is a harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court that there is no substantial likelihood the challenged evidence contributed to the conviction. *Turner v. State*, 953 N.E.2d 1039, 1059 (Ind. 2011). Here, the evidence of Williams's guilt is overwhelming. J.S.'s account of the rape was consistent throughout her initial statements to police, her subsequent statements to the nurse, and her testimony at trial. Williams's DNA was found on J.S.'s clothes and body, and J.S.'s testimony that Williams punched her in the mouth was corroborated by photographs showing swelling and bruising to her lips. Williams, on the other hand, was inconsistent. He initially claimed that he did not have any physical contact with J.S. but then changed his story and admitted that he had consensual sex with J.S. Because Williams's conviction is supported by substantial evidence of guilt apart from evidence of the recorded phone calls, its admission does not require reversal.

## II. Sufficiency of Evidence

[15] Williams next contends that the evidence is insufficient to support his conviction for Count V: Level 5 felony criminal confinement. When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the conviction. *Sallee v. State*, No. 03S00-1504-LW-00237, 2016 WL 1051588, at *3 (Ind. Mar. 16, 2016). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* Evidence is sufficient if an inference may reasonably be drawn from it to support the conviction. *Id.*

[16] To convict Williams of Level 5 felony criminal confinement as charged here, the State had to prove that Williams knowingly or intentionally confined J.S. without her consent and that the confinement resulted in bodily injury. *See* Ind. Code § 35-42-3-3(a), (b)(1)(C); Appellant's App. p. 23. "Confine" means to "substantially interfere with the liberty of a person." Ind. Code § 35-42-3-1. The record shows that Williams first blocked J.S. in the hallway and told her that she "wasn't going nowhere." When J.S. kept asking Williams to let her go and tried to walk out of the house, Williams locked the front door from the inside and blocked her in the dining room. Williams then told J.S. to empty her pockets. After J.S. handed her driver's license and $30 in cash to Williams, Williams punched her in her mouth, causing swelling and bruising to her lips. Notably, this happened before the rape. *See McFadden v. State*, 25 N.E.3d 1271, 1274 (Ind. Ct. App. 2015) (providing that in order to prove confinement beyond

the main crime charged, there must be something more than the act necessary to effectuate the main crime); *see also Mayo v. State*, 681 N.E.2d 689, 692 (Ind. 1997) (affirming confinement conviction because the evidence "supports the fact that a confinement took place separate from the rape"). We find that the evidence is sufficient to support Williams's conviction for criminal confinement.

### III. Appropriateness of Sentence

[17] Last, Williams contends that his aggregate sentence of fifty-two years is inappropriate in light of the nature of the offenses and his character. He asks us to run his rape sentences concurrent, for an aggregate sentence of thirty-six years.[1]

[18] Indiana Appellate Rule 7(B) provides that an appellate court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008). The principal role of Rule 7(B) review "should be to attempt to leave the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895

---

[1] Williams concedes that consecutive sentences are not prohibited under Indiana Code section 35-50-1-2(a). Nevertheless, Williams argues that his aggregate sentence is inappropriate because the trial court ordered Count I to run consecutive to the other counts.

N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case. *Id.* at 1224.

[19] For a Level 3 felony, Williams faced a sentencing range of three to sixteen years, with an advisory sentence of nine years. *See* Ind. Code § 35-50-2-5. For a Level 5 felony, Williams faced a sentencing range of one to six years, with an advisory sentence of three years. *See* Ind. Code § 35-50-2-6. The trial court imposed sixteen years for Count I, enhanced by twenty years for being a habitual offender, sixteen years for Count II, sixteen years for Count III, and six years for Count V. It then ordered Count I to be served consecutive to the other counts, for an aggregate sentence of fifty-two years.

[20] Concerning the nature of the offenses, Williams confined and raped J.S., knowing that her one-year-old son and four-year-old nephew were outside waiting for her.

[21] Furthermore, nothing about Williams's character convinces us that his sentence is inappropriate. As the trial court noted, Williams has convictions for manslaughter for killing his three-month-old son (for which he was sentenced to fifty years) and battery resulting in serious bodily injury to his wife (for which he was sentenced to eight years). He was on probation for that battery when he

committed these offenses. Tr. p. 379. In addition, Williams destroyed property while he was in jail awaiting trial. Despite Williams's previous contacts with the criminal-justice system and opportunities for rehabilitation, he has not been deterred from criminal activities. Williams's character does not warrant a reduction in his sentence. After due consideration of the trial court's decision, we cannot say that Williams has persuaded us that his aggregate sentence of fifty-two years is inappropriate.

[22] Affirmed.

Barnes, J., and Mathias, J., concur.