Filed 11/19/20  P. v. Robinson CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MARLON JOSEPH ROBINSON, <br><br> Defendant and Appellant. | F078077 <br><br> (Tuolumne Super. Ct. No. CRF51748) <br><br> **OPINION** |

## THE COURT*

APPEAL from a judgment of the Superior Court of Tuolumne County.  Donald I. Segerstrom, Jr., Judge.

Meredith J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Angelo S. Edralin, Deputy Attoneys General, for Plaintiff and Respondent.

-ooOoo-

---

* Before Levy, Acting P.J., Poochigian, J. and Detjen, J.

## INTRODUCTION

Appellant/defendant Marlon Joseph Robinson was convicted of two felonies and sentenced to a second strike term. On appeal, he contends the court abused its discretion when it denied his request to dismiss the prior strike conviction pursuant to Penal Code section 1385[1] and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). He further argues the court improperly imposed a restitution fine without finding he had the ability to pay those amounts based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). We affirm.

## FACTS

On the evening of November 10, 2016, Andrew Tolley walked into Applebee's restaurant in Sonora and paid for a take-out order with a $100 bill. The restaurant's host examined the bill, realized it was counterfeit, and called the Sonora Police Department. Tolley left the restaurant without taking the order and got into an SUV in the parking lot.

Sonora Police Officer Naomi Kneip responded to the restaurant. As she arrived, the restaurant's employees were outside and pointed to the SUV as it was driving away. Kneip activated her patrol car's signal lights and tried to conduct a traffic stop, but the vehicle failed to stop. Kneip followed the SUV through the shopping center's parking lot, and it eventually stopped.

Officer Kneip testified there were four people in the SUV: Tamika Hicks was driving, Tryonza Gresham was in the front passenger seat, and Tolley and defendant Marlon Joseph Robinson were in the back seat; they were all from Stockton.

An employee from Applebee's identified Tolley as the person who passed the counterfeit bill. Gresham was found in possession of counterfeit currency. Hicks was cited and released for driving without a license.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

2.

Officer Kneip testified that when she asked defendant for his name, he identified himself as "Tramaine" Robinson (Tramaine), falsely using his brother's name. She conducted a records check and determined Tramaine was on active probation with an outstanding misdemeanor arrest warrant. Kneip arrested defendant on Tramaine's warrant and asked if he had any drugs, needles, or weapons on his person. Defendant said no.

Additional officers arrived to assist Officer Kneip, and the SUV was searched. Defendant's identification and an Acer brand computer were found in a closed compartment in the back seat where defendant had been sitting. Kneip compared the photograph on defendant's identification photograph with a photograph of Tramaine that she received from a records check, determined the photographs did not match, and Tramaine was defendant's brother. Kneip also determined defendant had active warrants for his own arrest.

There were multiple bottles of Grey Goose and Ciroc vodka in the car that still had security caps from Safeway. There were also multiple bags of dog food, packages of coffee, and canned food in the SUV, along with baggies of methamphetamine and heroin, and used hypodermic needles. There were two televisions in the SUV's rear compartment. A paper cup in the front passenger door's cup holder contained several counterfeit $50 and $100 bills.

California Highway Patrol Officer Eli Dillon asked defendant if he had anything on him that he could not bring into jail, such as narcotics, knives, or guns. Defendant again said no.

Officer Kneip noticed a dealer's "paper" plate covered the SUV's metal license plate. She ran a check on the actual license plate and determined it was registered to Judith Williams, defendant's mother. Ms. Williams was contacted, and she said that defendant was driving her vehicle and not Tramaine.

3.

Defendant was transported to jail and searched during the booking process. The deputy found a bag of methamphetamine in his left sock and counterfeit bills in his right sock.

The officers determined that earlier on November 10, 2017, there were reported thefts of alcohol, dog food, and other items from Safeway, and a computer and two televisions from Walmart; the property was found in the SUV. The surveillance videos from the two Sonora stores showed Tolley walk around, put merchandise in a cart, and walk out without paying. The Safeway video showed Hicks and defendant walking around the store but not taking anything.

**Defense evidence**

Defendant testified at trial that he had a dog grooming and boarding business and made enough money to support his family and child. He admitted that he had a robbery conviction in 2002.

Defendant said that on November 10, 2017, he argued with his wife and left home to cool off. He was driving his mother's car and went to a lounge, met some friends there, and drank. He and his friends got back into his mother's car, but he let Ms. Hicks drive because he had been drinking. They went to the Chicken Ranch Casino in Sonora to gamble, and Tolley lost all his money.

Defendant testified they left the casino and Tolley said he wanted to do some shopping. They went to Safeway and Walmart, but he did not steal any property, help anyone steal, or know about or have a plan to steal any merchandise from either store. He walked around Safeway and bought a lottery ticket, realized he won, and went to a cashier to cash it. He left Safeway and went by himself to another store while they went to Walmart. He never went into Walmart.

After he finished at the other store, defendant rejoined his friends in the parking lot, and got back into the vehicle because did not have an alternative way to get home. The group drove around in his mother's car. He noticed the computer and televisions in

4.

the back of the SUV but did not know how they were obtained, did not ask if they were stolen, and thought there was a sale because it was close to the Black Friday sales. When the police stopped the SUV, he gave his brother's name because he had an outstanding warrant.

Defendant testified Tolley gave him the counterfeit bill found in his sock to help with gas money. He often puts money in his sock. He did not remember having methamphetamine in his sock because he was intoxicated.

## PROCEDURAL BACKGROUND

On May 31, 2017, a consolidated information was filed with the following allegations. Defendant Robinson and codefendants, Tyronza Gresham and Andrew Tolley, were jointly charged with count I, grand theft of the Acer computer and two televisions from Walmart (§ 487, subd. (a)); count II, receiving stolen property, based on the computer and two televisions (§ 496, subd. (a)); count III, misdemeanor making, passing or possessing counterfeit bills (§ 476); and count IV, conspiracy to commit grand theft at Walmart (§§ 182, subd. (a)(1), 487, subd. (a)).

Defendant was separately charged with count V, bringing narcotics into a jail (§ 4573, subd. (a)); and count VI, false personation (§ 529, subd. (a)(3)).

Defendant Robinson, and codefendants Tolley and Tamika Hicks were jointly charged with count VII, conspiracy to commit grand theft and commercial burglary at Safeway (§§ 182, subd. (a)(1), 487, subd. (a), 459); count VIII, grand theft from Safeway of multiple bottles of vodka, cans of Spam, cans of corned beef, packages of instant coffee, and packages of dog food (§ 487, subd. (a)); and count IX, second degree commercial burglary of Safeway (§ 459).

As to counts I through IV, it was alleged defendant had one prior strike conviction for robbery (§ 211) in San Joaquin County in 2002 (§ 667, subds. (b)–(j), § 1170.12).

5.

**Verdicts**

On May 31, 2017, defendant's jury trial began; he was tried separately for the charges against him.

On June 7, 2017, the jury found defendant guilty of count V, bringing narcotics into a jail, and count VI, false personation. He was found not guilty of counts I, IV, and VIII. The jury was unable to reach verdicts on the remaining counts. The court declared a mistrial and the prosecutor dismissed those charges. Defendant admitted the prior conviction allegation.

**Defendant's request to dismiss the prior strike conviction**

On July 21, 2017, defendant filed a request for the court to dismiss his prior strike conviction for robbery from 2002. Defendant asserted he was 19 years old when he committed the offense and 20 years old when he was convicted. Defendant stated that after the 2002 conviction, he had two parole violations and felony convictions for violating section 4573, bringing narcotics into jail, in 2004 and 2007. He had four misdemeanor convictions between 2011 and 2017.

Defendant argued he fell outside the spirit of the "Three Strikes" law and a second strike term would be inappropriate because his prior robbery conviction occurred 15 years ago; his current convictions were based on the nonviolent offenses of giving a false identification and possessing about a half gram of methamphetamine when he was booked into jail; he had his own business and a place to live at the time of his arrest; and he had the support of his family during the trial, including his brother whose identity he had claimed. Defendant also argued imposition of a second strike term based on his prior robbery conviction would violated the constitutional prohibition against double jeopardy.

The prosecutor's opposition argued defendant was not outside the spirit of the Three Strikes law based on the nature and circumstances of the current offenses; his prior robbery conviction included his admission to being armed with a firearm (§ 12022, subd. (a)(1)); and he had a lengthy record of felony and misdemeanor convictions

6.

beginning in 2000 including theft in 2000 and 2017 (§ 484), three felony convictions for petty theft with a prior conviction in 2001 and 2002 (§ 666), felony possession of drugs in prison in 2004 (§ 4573.8), and felony bringing drugs into prison in 2007 (§ 4573.8) while he was serving time for his robbery conviction; resisting an officer in 2016 (§ 148.9), and making or circulating unauthorized money in 2016 (§ 648). He was released on parole while serving the sentence for robbery, absconded in 2012 and 2013, and returned to prison after his second parole violation.

**Sentencing hearing**

On August 9, 2017, the court addressed defendant's motion to dismiss his prior strike conviction. The court accepted an offer of proof that defendant attended adult school while in custody, completed a GED, and engaged in a methadone program in 2007.

The court acknowledged that defendant was young when he committed the armed robbery. The court reviewed the probation report about the offense and remarked it was a "straight up" armed robbery that defendant committed with his brother, and then denied any involvement. The court found defendant had an extensive criminal history, many of his offenses were primarily theft-related, and that he committed prior offenses of bringing or possessing drugs in prison while serving his robbery sentence.

> "But the thing that is unmistakable to the Court here is that once the strike offense is committed, the defendant commits two new felony violations, which is the same violation that he's convicted of this time, some form of [section] 4573, either possessing contraband in a jail or prison or bringing contraband or drugs into a custodial facility. So this is his third offense in barely – relatively rapid succession."

The court found there was only a four-year period when defendant did not commit additional offenses. His next offense was "astonishingly similar to … the offenses here" of giving a false identification of an officer and possessing counterfeit money. The court also found defendant was "extraordinarily fortunate" that the jury in this case acquitted

7.

him of some of the more serious charges and was unable to reach verdicts on the other counts. "The Court can't essentially turn a blind eye to the evidence that was presented in the trial that while he's in the car … it is his mother's car, indicating that he had some responsibility for the car, and the car is just loaded with stolen property."

> "Now, he was not convicted of any of that stuff; granted. But he was convicted of the crimes that the jury found true and convicted him of. And what I'm looking at … this sort of connects over to his prospects because the defendant tells me he started a business, he has custody of his son, he's doing all these good things. What in the world is he doing in Sonora with these three people who appear – even if he was completely unaware of what they were doing, I mean, they're out on, basically, a stealing spree here in Sonora and he happens to be with them. Why? [¶] Now, [defendant] can say just – 'I was just with my friends.' But in terms of his prospects, it sort of cuts the other way. If he's … got custody of his son and has a business and is getting his life on track, why isn't he in Stockton keeping his life on track being with his son? So there is a question there that the Court can't answer."

The court denied defendant's motion to dismiss because it could not find he was outside the spirit of the Three Strikes law.

> "… I will accept as true the references that [defense counsel] makes about the defendant's character, that he was at least at some point trying to get his life back on track. But it is clear to the Court that something happened in that effort that derailed his process or derailed getting his life back on track because he's in possession of methamphetamine, he gives a false name, he is in … a car with a bunch of people who are apparently out on a stealing spree, and he's at least 60 miles from his home in a different county. That is not consistent with the representations that the defendant makes about his character, if I accept them as true. [¶] And so what are his prospects if he continues in this way? His prospects are very poor."

The court sentenced defendant to an aggregate term of nine years four months based on the upper term of four years, doubled to eight years as the second strike term for count V; plus a consecutive term of eight months (one-third the midterm) doubled to 16 months as the second strike term for count VI.

8.

The court imposed a restitution fine of $2,700 (§ 1202.4, subd. (b)) and suspended the parole revocation fine of $2,700 (§ 1202.45).  The court did not impose any other fees or assessments.

## DISCUSSION

### I.      The Court's Denial of Request to Dismiss the Prior Strike Conviction

Defendant contends the court abused its discretion when it denied his request to dismiss the prior strike conviction pursuant to section 1385.

#### A.      *Section 1385*

The trial court has discretion to dismiss a prior strike conviction in furtherance of justice under section 1385.  (§ 1385, subd. (a); *Romero*, *supra*,13 Cal.4th at pp. 529–530.)  In considering whether to exercise its discretion, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

"[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so.  In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper.  [¶] In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances.  For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss. [Citation.]"  (*People v. Carmony* (2004) 33 Cal.4th 367, 378 (*Carmony*).)

We review the court's decision under section 1385 under the deferential abuse of discretion standard.  (*Carmony, supra*, 33 Cal.4th at pp. 375–377; *People v. Williams,*

9.

*supra*, 17 Cal.4th at p. 162.) " 'It is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] Where the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]. Because the circumstances must be 'extraordinary … by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Carmony, supra*, 33 Cal.4th at p. 378.)

### B. Analysis

Defendant asserts the court abused its discretion because its ruling was not "grounded in sound judgment" since he deserved "the chance to become a productive citizen and make a life with his family." Defendant acknowledges his history of theft-related offenses, but argues it was "clear" he had "a debilitating drug habit" and it would be more beneficial for society to place him in a residential drug program instead of state prison.

Defendant's double jeopardy argument is meritless. "Recidivist statutes do not impose a second punishment for the first offense in violation of the double jeopardy clause of the United States Constitution. [Citation.]" (*People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1520; *People v. Sipe* (1995) 36 Cal.App.4th 468, 488–489.) "[T]he use of prior convictions to enhance a later sentence under a recidivism statute, such as the Three Strikes law, does not offend double jeopardy principles because 'the enhanced punishment imposed for the later offense "is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes," but instead as "a stiffened penalty for the latest

10.

crime, which is considered to be an aggravated offense because a repetitive one." '
[Citations.]" (*Allen v. Stratton* (C.D. Cal. 2005) 428 F.Supp.2d 1064, 1078, quoting
*Witte v. United States* (1995) 515 U.S. 389, 400.)

In addition, the court did not abuse its discretion when it declined to dismiss
defendant's prior strike conviction. As noted by the People, the trial court was well
aware of its discretion, extensively reviewed defendant's record, and explained defendant
was not outside the scope of a second strike sentence because of the seriousness of his
prior conviction for armed robbery, his commission of the current charges, his presence
in his mother's car in the midst of stolen property, his decision to associate with people in
another county who were on a crime spree, falsely identifying himself as his brother, his
concealed possession of narcotics and counterfeit bills when he was booked into jail, and
his prior commission of two similar offenses of giving a false identification and
possession of drugs while in custody.

## II.     The Restitution Fine

Defendant relies on *Dueñas* and argues the restitution fine was imposed in
violation of his due process rights because the court failed to find he had the ability to
pay. Defendant argues the fine must be vacated or the matter remanded for the court to
conduct a hearing on his ability to pay.

*Dueñas* held that "due process of law requires the trial court to conduct an ability
to pay hearing and ascertain a defendant's present ability to pay" before it imposes any
fines or fees. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1164, 1167.)[2] As we explained in
*People v. Aviles* (2019) 39 Cal.App.5th 1055 (*Aviles*), we believe *Dueñas* was wrongly
decided and an Eighth Amendment analysis is more appropriate to determine whether

---

[2] The California Supreme Court is currently considering whether trial courts must
consider a defendant's ability to pay before imposing or executing fines, fees, and
assessments; and if so, which party bears the applicable burden of proof. (See *People v.
Kopp* (2019) 38 Cal.App.5th 47, 94–98, review granted Nov. 13, 2019, S257844.)

restitution fines, fees, and assessments in a particular case are grossly disproportionate and thus excessive. (*Aviles,* at pp. 1068–1072.) Under that standard, the fine imposed in this case are not grossly disproportionate to defendant's level of culpability and the harm he inflicted, and thus not excessive under the Eighth Amendment. (*Aviles*, at p. 1072.)

More importantly, even if *Dueñas* applied to this case, defendant has forfeited any challenge to his alleged inability to pay the restitution fine of $2,700 under section 1202.4, subdivision (b). When the court imposes a restitution fine greater than the $300 statutory minimum amount, "[s]ection 1202.4 expressly contemplates an objection based on inability to pay." (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153 (*Frandsen*); *Aviles, supra*, 39 Cal.App.5th at p. 1073.)

While *Dueñas* had not been decided at the time of defendant's sentencing hearing, defendant had the statutory right to object to the $2,700 restitution fine and demonstrate his alleged inability to pay, and such an objection "would not have been futile under governing law at the time of his sentencing hearing. [Citations.]" (*Frandsen, supra*, 33 Cal.App.5th at p. 1154; *Aviles, supra*, 39 Cal.App.5th at pp. 1073–1074.)

Even if we agreed with *Dueñas,* however, we would still reject defendant's constitutional claims and find any error arising from the court's failure to make an ability to pay finding was harmless beyond a reasonable doubt since defendant has the ability to pay the fines and fees imposed in this case. (*Chapman v. California* (1967) 386 U.S. 18, 24; *Aviles, supra*, 39 Cal.App.5th at pp. 1075–1077; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1030–1031.)

> " ' "Ability to pay does not necessarily require existing employment or cash on hand." [Citation.] "[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future." [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody. [Citation.]' [Citations.]" (*Aviles*, *supra*, 39 Cal.App.5th at p. 1076.)

We can infer from the instant record that defendant has the ability to pay the aggregate amount of fines and fees from probable future wages, including prison wages. (*Aviles, supra*, 39 Cal.App.5th at p. 1076; *People v. Ellis* (2019) 31 Cal.App.5th 1090, 1094; *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397.)  There is nothing in the record to show that defendant would be unable to satisfy the fines and fees imposed by the court while serving his prison term, even if he fails to obtain a prison job.  While it may take defendant some time to pay the amounts imposed in this case, that circumstance does not support his inability to make payments on these amounts from either prison wages or monetary gifts from family and friends during his prison sentence.  (See, e.g., *People v. Potts* (2019) 6 Cal.5th 1012, 1055–1057; *People v. Lewis* (2009) 46 Cal.4th 1255, 1321; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 505.)

## **DISPOSITION**

The judgment is affirmed.

13.