[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11727

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ABEL BELTREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cr-00489-WFJ-CPT-2

_____

Before WILSON, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Abel Beltrez was convicted of conspiracy to possess a substance containing fentanyl with intent to distribute.  The district court imposed a sentence of 240 months—the statutory maximum. Beltrez argues that his sentence is procedurally and substantively unreasonable and that the district court violated his Fifth and Sixth Amendment rights by considering improper facts.  But the district court did not err in imposing Beltrez's sentence.  We therefore affirm.

The facts underlying Beltrez's conviction are not in dispute. One summer day in 2019, Vincent Trujillo picked up a known heroin dealer in his van, then dropped him off after circling a parking lot one time.  Later that day, Trujillo died from a fentanyl overdose.  After setting up controlled buys with the dealer who had supplied Trujillo's fentanyl, the police eventually obtained a warrant to search the dealer's house—one that he shared with Beltrez.  Beltrez, the dealer, and several other occupants were arrested when police found controlled substances, drug paraphernalia, and firearms scattered throughout the house. Fifteen grams of a substance containing the same type of fentanyl sold to Trujillo were found on Beltrez's person.  Further investigation revealed that Beltrez supplied heroin and fentanyl to the other residents of the house and provided food and lodging in exchange for their willingness to conduct drug transactions on his behalf.

Beltrez pleaded guilty to one charge of conspiracy to possess a controlled substance (fentanyl) with intent to distribute. *See* 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(C). The presentence investigation report calculated that under the Sentencing Guidelines, Beltrez faced a sentence of 41 to 51 months. It noted, however, that several factors weighed in favor of an upward departure. For instance, it explained that multiple prior sentences were treated as a single sentence on one occasion in 2008, lowering Beltrez's base offense level and criminal history category. Furthermore, while Beltrez had not been charged with causing Trujillo's death, the fact that death had resulted from the charged conduct could also justify an upward departure.

The district court agreed. It explained that Trujillo's death was "a knowing and reasonably foreseeable outcome of a drug distribution conspiracy" that Beltrez had aided and abetted. On top of that, Beltrez had managed to insulate himself from the consequences of the conspiracy by using the other residents of the house to conduct risky drug transactions like the one that caused Trujillo's overdose. In other words, even though he was a key player in the operation, Beltrez had managed to allocate most of the risk to his subordinates. The court was also troubled by Beltrez's "very substantial criminal history" and his participation in an organized crime group. In light of all this, the court applied an upward variance to Beltrez's sentence and imposed the maximum penalty allowed by statute: 240 months of imprisonment. *See* 21 U.S.C. §§ 846, 841(b)(1)(C).

On appeal, Beltrez argues that his sentence is procedurally and substantively unreasonable and that the district court's consideration of uncharged conduct (and of Trujillo's death) invalidates the sentence.  He is wrong on all counts.

First, the district court did not procedurally err.  We consider the procedural fairness of a sentence before its substantive reasonableness, and do so under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).  A district court may commit procedural error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *United States v. Pugh*, 515 F.3d 1179, 1190 (11th Cir. 2008) (quoting *Gall*, 552 U.S. at 51).

Beltrez points to no specific alleged procedural error, and we find none ourselves.  The district court correctly explained that the Sentencing Guidelines provided for a range of 41 to 51 months and that those Guidelines were advisory.  It imposed a sentence only after considering the factors outlined in "[§] 3553(a)(1) through (7)" in light of the record.  The court's reasoning reveals no reliance on any clearly erroneous fact.  And the court explains its deviation from the Guidelines range in considerable detail, outlining several specific factors justifying its variance.  Beltrez's sentence was procedurally valid.

Second, the sentence is substantively reasonable. We again apply the abuse-of-discretion standard to this inquiry, which requires us to "take into account the totality of the circumstances." *Gall*, 552 U.S. at 51. One such circumstance is the extent to which the sentence falls outside the range of the Sentencing Guidelines, but we "may not apply a presumption of unreasonableness" simply because a sentence is outside that range. *Id.* Instead, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* We may find a sentence to be unreasonable if it "does not achieve the purposes of sentencing stated in § 3553(a)"—that is, if the district court "weighed the factors in a manner that demonstrably yields an unreasonable sentence." *Pugh*, 515 F.3d at 1191 (quotation omitted).

That is not the case here. The district court considered the relevant § 3553(a) factors and explained why a sentence of 240 months was no greater than necessary to achieve the purposes of sentencing. Although Trujillo's death was "not intended," the court correctly noted that it indicated "the nature and severity of the criminal activity" in which Beltrez had engaged. *See* 18 U.S.C. §§ 3553(a)(1), 3553(a)(2)(A). The court also pointed out Beltrez's significant criminal history, which was "understated" due to the way in which Beltrez had been previously sentenced and which therefore was not fully reflected in the Guidelines range. And as explained above, the court was troubled by the "unusually pernicious" method of drug distribution employed by Beltrez,

which allowed him to easily shift legal consequences onto dealers working for him.

Beltrez's arguments that the court failed to properly weigh mitigating factors are not persuasive. The court acknowledged Beltrez's difficult life circumstances, but explained that any mitigation was "outweighed significantly by the pretty much nonstop criminal activity" in which he engaged. Beltrez now argues that he "will be of little risk to reoffend and will be of an even lesser risk to the public upon his release from prison." But this unsupported statement does not offset the district court's concerns about his organized crime activity, his extensive criminal history, and his lack of lawful work experience.

Although the district court varied upward from the Sentencing Guidelines recommendation, it did so based on the seriousness of the offense, the circumstances of the case, and the need to prevent Beltrez from committing further criminal acts. Beltrez's sentence thus does not lie "outside the range of reasonable sentences dictated by the facts of the case." *See Pugh*, 515 F.3d at 1191 (quotation omitted).

Finally, Beltrez argues that the district court improperly considered uncharged conduct in formulating his sentence. The district court specifically discussed Trujillo's death as a factor supporting its upward variance. But Beltrez was not charged with distribution resulting in death, so Beltrez contends that this was a violation of his Fifth and Sixth Amendment rights.

We review the constitutionality of a defendant's sentence de novo. *United States v. Ghertler*, 605 F.3d 1256, 1268 (11th Cir. 2010). But here we are bound by precedent, which "squarely holds that sentencing judges may find facts under an advisory Guidelines system so long as the sentence imposed does not exceed the statutory maximum." *Id.* at 1269; *see also Witte v. United States*, 515 U.S. 389, 397–404 (1995). The district court did not exceed the statutory maximum, so its consideration of facts not charged in the indictment and not found by a jury did not violate Beltrez's constitutional rights.

We **AFFIRM** Beltrez's sentence.