

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0581-24

### EX PARTE AMARILLYZ ESTEVEZ, Appellant

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE FIRST COURT OF APPEALS HARRIS COUNTY

KEEL, J., delivered the opinion of the Court in which RICHARDSON, NEWELL, WALKER, and MCCLURE, JJ., joined. SCHENCK, P.J., filed a dissenting opinion. FINLEY, J., filed a dissenting opinion in which PARKER, J., joined. YEARY, J., dissented.

### O P I N I O N

Appellant is charged with driving while intoxicated ("DWI"). She seeks habeas relief to avoid prosecution for that charge. She says she was previously prosecuted and punished for contempt for having committed that DWI and is in jeopardy of successive prosecution and multiple punishments for the same offense. Her successive prosecution claim is without merit because the contempt order was void for lack of notice and was withdrawn by the trial court. But her multiple punishments claim is meritorious, so we

reverse the judgments of the lower courts.

## I.     Background

In November 2021, Appellant was charged with misdemeanor DWI, and her bond was conditioned on, among other things, her committing no crime and engaging in no conduct that would cause her arrest.   In 2022 while that first DWI was pending, she was charged intermittently with one felony and five more misdemeanors, including, finally, a second DWI.   Here is the timeline of her 2022 charges:

| | |
|---|---|
| May 17: | Theft |
| May 31: | Carrying a weapon |
| June 1: | Possession of a controlled substance (felony) |
| November 16: | Criminal mischief |
| December 5: | Possession of a controlled substance and second DWI |

On December 9, 2022, the trial court ordered her to show cause "why she should not be held in contempt and punished for failing to abide by the ORDERS of this Court, to wit:   DEFENDANT COMMITTED A CRIME AND/OR ENGAGED IN CONDUCT THAT RESULTED IN HIS [sic] ARREST."   The show-cause order did not specify either the crime or the conduct.

At the show-cause hearing four days later, Appellant objected that the show-cause order was defective for failing to give her adequate notice.   She withdrew her objection when the judge threatened to leave her in jail for another three days to give her notice. The State admitted two exhibits into evidence: (1) the order for pretrial supervision and bond conditions from the initial DWI charge and (2) the charging instrument from the second DWI.   The prosecutor explained that State's Exhibit 2 was "the complaint for a

driving while intoxicated that occurred on December 5, 2022, which states that the defendant Estevez is being charged with driving while intoxicated in the State of Texas, which is a criminal offense." The prosecutor argued that Appellant "clearly violated her bond conditions" that she had signed in December 2021 because "she picked up the new law violation of the driving while intoxicated which occurred back on – doublechecking 12/05/2022." The trial judge asked, "[H]ow many cases does she currently have open in this court?" And the State recited the other charges pending against Appellant:

> She has possession of a controlled substance, which was picked up also on 12/5/22; the DWI, I've already mentioned, which has the same offense date; a criminal mischief, which has an offense date of 11/16/22.
>
> She has a [sic] unlawful carrying of a weapon, which occurred on 5/31/2022, which is a felony case –so that one is not in this court.
>
> She has a theft in the aggregate which occurred on 5/17/2022, and then the DWI which she was given the original bond conditions from 11/25/21.

The prosecutor said she had nothing further, and the trial court asked the defense for a response. The defense attorney said that first "there was deficient notice in this case" and quoted the show cause order: "Defendant committed a crime and/or engaged in conduct that resulted in his arrest." He started to cite a case, and the court interrupted to ask if that was his only legal argument. He replied that the second argument "would be that we would ask for leniency and specifically ask the Court not to go over the maximum allowable judgment of Harris County jail of three days pursuant to TCCP 7.18, your Honor." After some discussion about the applicability of that statute, the trial court

said:

> So, what we'll do is we'll just leave her in custody and give you a notice that states all of her law violations that she received and go from there. . . I mean, it's more time your client sits in jail. That's longer than what you say the penalty is. I want to make sure you feel that you have the right notice. So do you want to go forward on the notice or do you want to withdraw the notice?

Defense counsel said he would withdraw the notice claim and ask "for leniency and not exceeding the statutory maximum of three days and/or a fine of $100, your Honor." After discussion about the court's authority to probate the three-day sentence, the difference "between orders and conditions[,]" and a case cited by the defense, the court announced its decision: it found Appellant guilty of contempt, saying,

> So, what I'll do is I'll find her guilty of violating the charges the State has brought forward under the Show Cause, sentence her to three days and send her to WHO-A as part of her probation.

> I'll probate her 3-day sentence. And we'll probate it for nine months, whenever she finishes the program, and I'll terminate the probation.

The defense attorney asked if she could simply serve the three days and forgo the probation, but the court demurred. "Counsel, are you – I mean, she picks up a new case every other week. Do you want her to like eventually go to prison for life? Or do you want this – what is your goal?" The defense attorney answered in the negative, explaining that "she's already going there pursuant to the felony court."

The written judgment corresponded to the oral pronouncement: Appellant was found in contempt for unspecified disobedience of a court order, sentenced to three days in jail probated for nine months, and committed to a residential treatment facility,

Women Helping Ourselves—Atascocita ("WHO-A").

Thirty days later, Appellant filed an application for writ of habeas corpus seeking dismissal of the second DWI charge on grounds that she was already prosecuted and punished for it when she was held in contempt. On February 6, 2023, the trial court dismissed the show cause order and withdrew its contempt judgment, citing lack of notice.

On March 13, 2023, the trial court held a hearing on Appellant's application for writ of habeas corpus. The trial court denied Appellant's writ application, and she appealed.

## II.     Court of Appeals

The court of appeals affirmed the trial court's judgment. *In re Estevez*, No. 01-23-00216-CR, 2024 Tex. App. LEXIS 4374, at *17 (Tex. App. June 25, 2024). It determined that the contempt judgment was void, and the trial court had the power and duty to vacate it even though its plenary power had expired. *Id.* at *16-17. Because the contempt order was vacated, the court of appeals concluded that it no longer existed and, without a valid judgment of conviction having been entered for the same offense, Appellant could not show that she had been placed in jeopardy. *Id.* at *11-12.

## III.    Criminal Contempt and Double Jeopardy

Criminal contempt enforced in non-summary fashion "is 'a crime in the ordinary sense.'" *United States v. Dixon*, 509 U.S. 688, 696 (1993) (quoting *Bloom v. Illinois*, 391 U.S. 194, 201 (1968). Defendants charged with contempt enjoy most of the same

constitutional protections applicable to other criminal defendants—notice of charges, the presumption of innocence, burden of proof beyond a reasonable doubt, privilege against self-incrimination, and a bar against double jeopardy. *Id.* The right to a jury trial, however, is inapplicable to "petty" contempt prosecutions. *Bloom*, 391 U.S. at 210.

The Double Jeopardy Clause says, "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. It prevents "both successive punishment and successive prosecution" for the same offense. *Witte v. United States*, 515 U.S. 389, 395-96 (1995) (citing *Dixon*, 509 U.S. at 696). Two offenses are the same unless the provisions defining them each require "proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The double-jeopardy bar may apply when two offenses cannot pass the same-elements test. *Dixon*, 509 U.S. at 696. The same-elements test asks whether each offense depends on a unique element; in other words, "whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." *Id.*

The same-elements test is a method of statutory construction; its purpose is to give effect to legislative intent. *Whalen v. United States*, 445 U.S. 684, 691-92 (1980). It will not foreclose multiple punishments if the statutes are clear that the Legislature intended to allow multiple punishments for the same offense. *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983). *Dixon*'s two consolidated cases illustrate *Blockburger*'s same-

elements test as applied to contempt for violation of bond conditions; Dixon enjoyed protection from further prosecution, but Foster did not.

Dixon was on bond for murder, and his bond was conditioned on his committing no crime, but while on bond he was charged with possession of cocaine. *Dixon*, 509 U.S. at 691. After a show cause order and a hearing in which his cocaine possession was proven, Dixon was held in contempt and sentenced to 180 days in jail. *Id.* at 692. The trial court later granted his motion to dismiss the cocaine indictment as barred by double jeopardy. *Id.* The Supreme Court upheld the dismissal because "the 'crime' of violating a condition of release cannot be abstracted from the 'element' of the violated condition." *Id.* at 698. He violated an order that "incorporated the entire governing criminal code[.]" *Id.* The underlying offense of cocaine possession was "a species of lesser-included offense." *Id.* (quoting *Illinois v. Vitale*, 447 U.S. 410, 420 (1980)). "Because Dixon's drug offense did not include any element not contained in his previous contempt offense, his subsequent prosecution violates the Double Jeopardy Clause." *Id.* at 700.

By contrast, in the companion case, Foster was under a civil protection order ("CPO") that prohibited him from assaulting his wife. *Id.* at 692. He was held in contempt for violating the CPO by committing simple assault, but that did not bar his subsequent prosecution for assault with intent to kill because the contempt judgment and the assault indictment had unique elements. *Id.* at 701. Specifically, the contempt judgment depended on evidence that Foster knew of the CPO and committed simple

assault, and the assault indictment alleged intent to kill. *Id.* at 701-02. Because both prosecutions depended on at least one element that the other did not, they were different offenses, and prosecuting Foster for both did not offend the bar against double jeopardy. *Id.* at 702.

## IV.    Analysis

The Legislature wrote Code of Criminal Procedure Chapter 17 to deal with bail bond conditions in ways that are distinct from contempt. *See, e.g.*, Tex. Code Crim. Proc. art. 17.40(b) (allowing for revocation of bail bond if defendant violated a condition); art. 17.09 § 3 (allowing judge to reissue bail bond if it is defective or insufficient). Chapter 17 says nothing about punishment via contempt for bond-condition violations. In contrast, the Legislature has specified that the violation of a peace bond may be punished in multiple ways—forfeiture of the bond, fine, imprisonment for contempt, or all three. Tex. Code Crim. P. art. 7.18. Its failure to spell out those options under Chapter 17 signifies that such bonds are exclusively enforced by the remedies provided in that chapter and not by contempt.

## A.  No Notice, Void Judgment, No Bar to Successive Prosecution

The show cause order here gave Appellant no notice of her offending conduct. It did not specify the crime she committed or the conduct she engaged in that might have violated an order.

But the prosecution filled in those gaps when it offered into evidence the second DWI's charging instrument: it was prosecuting Appellant for contempt of court for

having committed a second DWI. The prosecutor said Appellant "clearly violated her bond conditions" when "she picked up the new law violation of the driving while intoxicated" on December 5, 2022.

The trial court confirmed as much in two instances. First, it offered to leave Appellant in jail and "give you a notice that states all of her law violations." Second, it said that it was holding her in contempt for "violating the charges the State has brought forward under the show cause." These comments mark a distinction between "all of her law violations" and the only one "brought forward" by the State—the second DWI. So, while the show cause order failed to specify any conduct that violated a bond condition, the record shows that Appellant was prosecuted and punished via contempt for the second DWI.

Still, because the show cause order did not state an offense, it was void for failing to provide Appellant with sufficient notice. The contempt judgment based on it was void, and a void judgment does not bar a successive prosecution. *Hoang v. State*, 872 S.W.2d 694, 698 (Tex. Crim. App. 1993). Therefore, Appellant's successive prosecution claim fails. But as discussed below, her multiple-punishments claim has merit.

## B. Multiple Punishments

The Double Jeopardy Clause bars not only the imposition of multiple punishments for the same offense; it protects against the attempt to do so. *Witte*, 515 U.S. at 396. Appellant was punished for the second DWI when the trial court held her in contempt

and sentenced her to three days in jail for allegedly having committed it.   As in the eponymous *Dixon* case, Appellant was held in contempt for violating a bond condition that prohibited committing a crime, and her "'crime' of violating a condition of release cannot be abstracted from the 'element' of the violated condition."   *See Dixon*, 509 U.S. at 698.   The DWI was a lesser-included offense.   *See id.*; *see also Aekins v. State*, 447 S.W.3d 270, 274 (Tex. Crim. App. 2014) (noting that a multiple-punishment double jeopardy violation may occur when the same conduct is punished under both a greater and a lesser-included offense); *Littrell v. State*, 271 S.W.3d 273, 275-76 (Tex. Crim. App. 2008) ("In the multiple-punishments context, two offenses may be the same if one offense stands in relation to the other as a lesser-included offense").   Accordingly, any effort to punish her a second time for the second DWI is prohibited by the constitutional bar against double jeopardy.

## V.   Reply to Dissenting Opinions

Presiding judge Schenck's dissenting opinion argues that Appellant was not necessarily held in contempt for committing the second DWI, but the record shows otherwise.   His opinion suggests that she could have been held in contempt for having been arrested, but the State did not rely merely on her arrest when it prosecuted her for contempt—it relied exclusively on her having been charged with DWI.   Perversely, the dissent would deprive Appellant of protection against multiple punishments because she was also deprived of adequate notice and sentenced to jail on less than proof beyond a reasonable doubt, but that would only compound the trial court's errors.

Judge Finley's dissenting opinion rests on two faulty premises. The first is his assertion that jurisdiction may be waived. But jurisdiction is an absolute requirement and may not be waived. *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993). Jurisdiction depends on a valid charging instrument. *Garcia v. Dial*, 596 S.W.2d 524, 527 (Tex. Crim. App. 1980). It is not conferred merely by the defendant's appearance in court. *Id.* The second faulty premise is the claim that Appellant's waiver of notice was freely made. Since it was produced by the trial court's threat to leave her in jail even longer if she insisted on notice, it was not a free choice but was a coerced one. Even the trial court finally recognized what the dissent still does not—that it never had the authority to jail Appellant on the defective show-cause order.

## VI. Conclusion

Appellant was already punished for the December 5, 2022, DWI and is entitled to relief from further punishment for that offense. We reverse the judgment of the court of appeals and remand to the trial court for dismissal of the DWI charge in Cause No. 2435337.

Delivered: June 4, 2025

Publish